STATE ex rel. GRIMM v. MANHATTAN RUBBER
MANUFACTURING COMPANY et al.,
Appellants.

Division One, March 30, 1899.*

1. **Practice** : ATTACHMENT: REMARKS OF TRIAL JUDGE.  A remark of the trial judge, in the hearing of the jury, that the only question in the suit was the power of the directors to prefer themselves in a deed transferring the company's property to a trustee for the benefit of creditors, is error, if the authority of those who assume to act for the company to execute the deed was one of the issues.

2. ———: ———: GOOD FAITH OF DIRECTORS.  A transfer of property to a trustee by the board of directors, to secure themselves as favored creditors, in utter disregard of the interests of the corporation and its stockholders, is fraudulent and invalid.  It is their paramount duty in making such transfer to regard the interests of the corporation and of its stockholders, and unless they do this they do not exercise that good faith which the law requires.

3. ———: ———: ———: CHANGE IN CONSENT OF DIRECTORS.  The duty of guarding with honest care the interest of the stockholders, does not end with the meeting of the board of directors which authorizes a transfer of the company's property in trust for themselves and others as preferred creditors, but continues up to the delivery of the deed.  And it is proper to show that after such meeting and the adoption of proper resolution, and before the execution and delivery of the deed, a director and principal stockholder changed his mind and became opposed to the deed and preference, and that the other directors knew or had cause to believe this fact.  Such evidence is material as tending to show whether or not said director so acquiesced in the deed as to relieve the active directors of their duty to protect him.

4. ———: ———: DEEDS TO TRUSTEE: QUESTION FOR JURY.  Whether or not there was a valid board meeting at the time the transfer of the company's property to a trustee for benefit of creditors was authorized, and whether or not certain directors acquiesced in said transfer, are matters for the jury, under proper instructions as to what constitutes a valid meeting.

*NOTE.—Decided February 15, 1899.  Motion for rehearing filed; overruled March 30, 1899.

State ex rel. v. Rubber Mfg. Co.

5. **Corporation**: MEETING OF DIRECTORS WITHOUT NOTICE: BY-LAWS. A by-law of a corporation to the effect that when all the directors were present a meeting could be held without notice, does not mean that a valid meeting can be forced upon a director at any time without his consent, by the others going to his sick chamber and declaring the meeting on.

6. ————: SUBSTITUTION OF FAC-SIMILE SEAL. The substitution of a *fac-simile* or new seal by the directors essaying to transfer the property of a company, is a circumstance going to show the good faith and honest purpose in making the transfer.

7. ————: CHATTEL DEED: PREFERRING DIRECTORS. The transfer of a corporation's property to a trustee by a deed which makes the directors voting for the transfer preferred creditors, is not invalid for that reason alone.

8. ————: NOTES SIGNED BY CORPORATION. Notes made by the president of a corporation to other of its directors are *prima facie* evidence of valid obligations.

9. ————: STATUTORY BOND. All the provisions of the statute relating to the obligation of a statutory bond are to be read into the bond as its terms and conditions.

10. ————: STATUTORY INDEMNIFYING BOND. It is not necessary under our statute that there be a sale before a suit may be maintained on a bond given the sheriff by the plaintiff in an attachment to indemnify a claimant in possession of the property, although the bond itself says there is to be no breach until seizure and sale of the property.

### Per MARSHALL, J., in Separate Opinion.

1. **Corporation**: PRACTICE: BURDEN ON BENEFICIARY OF CHATTEL DEED. It is not necessary for the beneficiary under a deed of trust, by which the property of a corporation is transferred to a trustee for the benefit of certain creditors, to show that in making the preference the directors took into consideration the interest of the corporation and of the stockholders, as well as those of the preferred creditors.

2. ————: ————: ————: PREFERRING DIRECTORS. A preference of directors in such deed is not *prima facie* fraudulent.

3. ————: ————: ————: FRAUD. The burden of proof in such case is on him who charges the conveyance to be fraudulent. The presumption of innocence of fraud surrounds the accused.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

WARWICK HOUGH, C. S. BROADHEAD, P. TAYLOR BRYAN
and O. B. GIVENS for appellants.

(1)   The petition in this case fails to state a cause of
action, in this, that it appears from the petition that the con-
dition of the bond sued on was  that the Manhattan Rubber
Manufacturing Company should "indemnify the said Henry
Troll, sheriff, against all damages and costs which he may
sustain in consequence of such seizure and sale of the prop-
erty aforesaid under said writ."     And the petition fails to
state that there ever was any sale of said property.     Nor
should the bond, for the same reason, have been admitted in
evidence.     Prior v. Kiso, 81 Mo. 249; Nofsinger v. Hart-
nett, 84 Mo. 549; Brandt on Suretyship, secs. 79 and 80.
(2)   The minutes, purporting to be of a meeting of board of
directors, should not have been admitted in evidence against
the defendants in this suit.     Much of the matter contained
in said minutes was mere hearsay.     Railroad v. Kimmel, 58
Mo. 83.     (3)   The trial court should have permitted the
witness Ohrndorf to answer, on cross-examination, the ques-
tion, whether, by putting the indebtedness to himself in the
name of  Lang, he did not want "the deed to appear to do
something in truth and fact it did not do."     That act was
evidently intended to deceive the other creditors, and appel-
lants had a right to show by the witness himself, that he in-
tended in that particular  to  perpetrate  a  fraud upon the
other creditors.     (4)   So, also, should the court have per-
mitted the witness to answer the question as to why he did
not place the Manhattan Rubber Manufacturing Company
closer to the top of the list of creditors named in the trust
deed.   The question before the court was one of fraud, and
the largest latitude should have been allowed in the cross-
examination of the witness who was alleged to be a party to
the fraud.   (5)   Appellants should have been allowed to
show what the assets of the corporation amounted to, so that

it might clearly appear that under the order of preferences established by the deed, the Manhattan Rubber Manufacturing Company would get nothing. (6) Appellants should have been permitted to show the nature of the dispatches sent by the president of the company to the appellant, and also that he did not consent to the execution of the deed in question. (7) The court erred in giving, at the instance of the plaintiff, instructions numbered 3, 4, 5, 6, 7, 8 and 10. The third, fifth, sixth and seventh instructions assert in various forms the right of the directors of the Peters Rubber & Supply Company to prefer themselves as creditors of said company, by their own votes, to the detriment of other creditors of said company; such conduct being inequitable and unjust, contrary to good morals. Morawetz on Priv. Corps., sec. 244; 5 Thompson on Corps., secs. 6498, 6499, 6500, 6501, 6502, 6503 and 6504; Beach v. Miller, 17 Am. St. Rep. 307 and note; Bent v. Priest, 86 Mo. 475; Ward v. Davidson, 89 Mo. 445; Foster v. Planing Mill, 92 Mo. 79; Roan v. Winn, 93 Mo. 503; LaGrange Butter Tub Co. v. Bank, 122 Mo. 154; Alberger v. Bank, 123 Mo. 213; Suddath v. Gallagher, 126 Mo. 393; Slavens v. Drug Co., 128 Mo. 341; Milling Co. v. Com. Co., 128 Mo. 473; Schufeldt v. Smith, 131 Mo. 280; Hill v. Rich Hill Coal Mining Co., 119 Mo. 9; Williams v. Jones, 23 Mo. App. 132; Roseboom v. Whitaker, 132 Ill. 81; Sicardi v. Oil Co., 149 Pa. St. 148; Wilkinson v. Bauerle, 41 N. J. Eq. 635; Olney v. Land Co., 16 R. I. 597; Adams v. Milling Co., 35 Fed. 433; Lippincott v. Show Carriage Co., 25 Fed. 577; Consolidated Tank Line Co. v. Kansas City Varnish Co., 43 Fed. 204; Farmers' Loan & Trust Co. v. San Diego Street Car Co., 45 Fed. 518; Sutton Mfg. Co. v. Hutchinson, 63 Fed. 496; Sanford Fork & Tool Co. v. Howe, Brown & Co., 157 U. S. 312; Corey v. Wadsworth, 99 Ala. 68; Gibson v. Furniture Co., 96 Ala. 357; Hays v. Bank, 51 Kan. 535; Ingwersen v. Edgecombe, 42 Neb. 740; Goodyear Rubber Co. v.

Geo. D. Scott Co., 96 Ala. 439; Richards v. Ins. Co., 43 N. H. 263; Graves v. Mining Co., 81 Cal. 303; Perry on Trusts, sec. 207.     (8) The three directors of the Peters Rubber & Supply Company, namely, Peters, Ohrndorf and Ruane, were personally liable, as makers, on the notes held by the Third National Bank and the Continental Bank, and they could not by their own votes, as directors, give preference to said debts, to the detriment of the other creditors of said company.   Nor could they prefer the debts evidenced by the seven notes on which they were indorsers.   Hill v. Rich Hill Coal Mining Co., 119 Mo. 9; 5 Thompson on Corps., secs. 6498 to 6504; Consolidated Tank Line Co. v. Kansas City Varnish Co., 43 Fed. 204; Goodyear Rubber Co. v. Scott, 96 Ala. 439.   (9) If it be possible to uphold, as consistent with good morals, a preference given by directors to themselves by their own votes, then the preference given by the directors in this case to themselves, was *prima facie* fraudulent in fact, and there was no testimony showing that the money advanced on the notes on which they were liable as makers and indorsers, was used in the business, or for the benefit of the company; and such testimony was essential to establish the *bona fides* of the indebtedness in the eye of the law.   Schufeldt v. Smith, 131 Mo. 280; s. c., 139 Mo. 375.

SENECA N. TAYLOR, CHARLES ERD and H. A. LOEVY for respondent.

(1) The doctrine is firmly settled in this State that *bona fide* indebtedness, due by a corporation to its officers or directors, may be secured by a deed of trust in their favor, giving them a preference over general creditors, though the corporation is insolvent and their votes are necessary to cause the execution of such preference.   Butler v. Land and Mining Co., 139 Mo. 467; Schufeldt v. Smith, 131 Mo. 280; Milling Co. v. Com. Co., 128 Mo. 473; Foster v. Planing Mill

Co., 92 Mo. 79; In re Bloomfield Woollen Mills Co., 70 N. W. 118; Rollins v. Carriage Co., 80 Ia. 386; Warfield v. Canning Co., 72 Ia. 670; Garrett v. Plow Co., 70 Ia. 702; Hollen v. Hotel Co., 56 Ia. 178; Bank v. Wassen, 48 Ia. 346; Buell v. Buckingham, 16 Ia. 248; Bank v. Salt and Lumber Co., 90 Mich. 350; Kendall v. Bishop, 76 Mich. 634; Town v. Bank, 2 Doug. (Mich.) 530; Clapp v. Allen, 50 N. W. 590; Levering v. Bimel, 146 Ind. 553; Bank v. Dovetail Body and Gear Co., 143 Ind. 553; Henderson v. Trust Co., 143 Ind. 569; Worther v. Griffin, 59 Ark. 562; Bank v. Whittle, 78 Va. 737; West v. Produce Co., 41 Pac. 829; Smith v. Skeary, 47 Conn. 47; Whitwell v. Warner, 20 Vt. 444. (2) The maxim that "the directors of an insolvent corporation are trustees for the benefit of its creditors," does not imply that they may not prefer one creditor over another, nor that such preference may not be given to officers and directors of the corporation. It only means that the assets must be used for the payment of *bona fide* indebtedness of the corporation before dividends are paid on capital stock. (3) When the right of a corporation to give preferences to any of its creditors is conceded the logical conclusion follows that it may give them to any creditor who holds a *bona fide* debt against it, though he be an officer and director of the corporation. (4) A chattel deed of trust given to secure the individual debts of several persons is regarded, in law, as several mortgages; if invalid as to one or more of the debts for any cause, it may still be valid as to the others. Woodson v. Carson, 135 Mo. 521; Kuh v. Garvin, 125 Mo. 547; Burnett v. Marshall, 22 Pick. 556; Teft v. Stearn, 75 Fed. 594; Cobbey on Chattel Mort., secs. 150, 416 and 418; Jones on Chattel Mort. (3 Ed.), secs. 336 and 351. (5) It is not necessary that a chattel deed of trust should be executed under seal. Though a mortgage be in the form of a deed and purport to be sealed, the omission of the seal does not invalidate it. A chattel mortgage is only a bill of sale with a

defeasance, and a sale of personal property is never required to be by deed.   Jones on Chattel Mort. (3 Ed.), sec. 102; Buckley v. Briggs, 30 Mo. 452; Campbell v. Pope, 96 Mo. 472; Gutfelt v. Miller, 104 U. S. 521.   (6) The chattel deed of trust in question was executed by authority of the corporation given at a meeting of its directors, held in keeping with its by-laws, one of which reads:   "Whenever all the stockholders or directors are present special meetings may be held without further notice."   (7)   The court committed no error in the instructions given for respondent.   They were all predicated on evidence and were applicable and abundantly upheld by the authorities.   The court committed no error in refusing the instructions asked by the appellant. They were in conflict with those given for respondent and erroneous in law.

VALLIANT, J.—This is a suit upon the statutory bond given by a plaintiff in attachment to the sheriff to indemnify a third party claimant of the property attached.

The facts of the case are substantially as follows:   The Peters Rubber and Supply Company was a corporation doing business in St. Louis in 1895.   There were but three directors, viz., Charles C. Peters, James Ruane and Charles W. Ohrendorf, who were respectively president, vice-president and secretary.   Peters owned nearly all the stock; Ohrendorf and Ruane owned each a small part and had very little to do with the business, both being engaged in other pursuits, and the business of the corporation was under the sole management of Peters.   In December, 1895, the corporation was indebted as follows:   Third National Bank, $10,000; Continental Bank, $4,700; Berthold Lange, for director Ohrendorf, $9,155.99, for director Ruane, $420.20; Graton Knight Manufacturing Company, $9,027.45; Metropolitan Rubber Company, $10,543.74; Manhattan Manufacturing Company, $9,399.78; Cable Rubber Company, $621.50;

Boston Woven Hose Company, $921.73; Milford Shoe Company, $534.65; Kelly-Goodfellow Shoe Company, $264.52; The Western Advertising Company, $400; W. L. Williamson, $265.25; New York Leather Belting Company, $219.44; aggregating over $50,000. The debts owing to the Third National Bank and the Continental Bank were evidenced by notes indorsed by directors Ohrendorf and Ruane. The debt to Lange was evidenced by notes which belonged to Ohrendorf and by him turned over to Lange for the purpose of having them appear in his name in the deed of trust presently to be mentioned. The Ruane debt was evidenced by note. As to the rest of those debts, the directors Ohrendorf and Ruane were under no individual liability and had no interest.

On December 19, 1895, Peters was confined to his home with serious illness, and Ohrendorf looked into the affairs of the corporation and became alarmed on account of the debts for which he was indorsee and those owing to himself. He then applied to his personal attorney, Mr. Grimm, for advice as to the best method of securing himself. Mr. Grimm advised the execution of a deed of trust conveying all the property of the corporation to secure the debts of the concern, applying the proceeds of the property to the payment of the debts, not *pro rata*, but in the order to be enumerated in the deed, naming first those on which he was indorser, then the debt due him, then the debt due director Ruane, and after that the other debts. It was also concluded between Ohrendorf and his attorney that it would look better if his debt did not appear in the deed in his own name, and for that reason it was put in the name of his friend Berthold Lange. Acting on this advice of his attorney, Ohrendorf conferred with Ruane, who approved the scheme. The two went to the home of Mr. Peters and according to the testimony of these two, which is all the evidence we have on that point, Peters agreed to it. That was Thursday, December

19.   They left with the understanding that the three should meet at the store on the following Monday, and execute the deed.   But during that interview Ohrendorf became impressed with the idea that Peters was going to die, and with this thought in mind they had the deed drawn by Mr. Grimm, and on Saturday Mr. Ruane and a notary took it to Mr. Peters' house for him to execute.   He read it, according to their testimony, and was about to sign it, when the notary asked him if he had the corporate seal at hand, and on being answered in the negative the notary declined to take the acknowledgment, and he and Ruane went away leaving the deed in Peters' possession.   The next day, Sunday, Peters sent to the store and got the seal.   On Monday at 9 a. m. the notary returned to Peters' house, but, as he testified, was met at the door by Mrs. Peters, who stated that her husband was too ill to see anyone or attend to business, and declined to admit the notary, and declined to give him the deed or seal.   The notary immediately went down town and reported these facts to Ruane, and he and Mr. Grimm, the attorney, requested the notary to go to Mr. Peters' house again, which he did at about 11 a. m. of same day, and met with the same refusal, and immediately reported the result to Mr. Ruane. Then Ohrendorf and Ruane held a meeting, ordered a new seal to be made, which was done, and executed the deed, Ruane signing it as vice-president, acting president.   The deed was immediately put of record, and the trustee took possession of the goods.

The   Manhattan   Rubber   Manufacturing   Company brought suit by attachment against the Peters Rubber and Supply Company and the sheriff, under the attachment, seized part of the goods covered by the deed of trust, which were claimed in due statutory form by the trustee; whereupon the Manhattan Company, the plaintiff in attachment, executed the bond now sued on, and the sheriff retained the goods.

Upon the trial the plaintiff endeavored to show that the meeting at Peters' house was a regular board of directors' meeting, and to this end both Ohrendorf and Ruane testified that the former told Peters they desired it to be considered a regular meeting and the result written up as such in their minute book, and that Peters assented. A by-law was in evidence to the effect that when all of them were present, a meeting could be held without notice. There was no formal opening or closing of a meeting, but according to the two witnesses, the business was discussed and agreed on and they separated. A few days after the deed had been executed Mr. Ohrendorf wrote in the minute book what purported to be the minutes of that meeting, reciting a formal opening, discussion of the business, motion to execute the deed which was carried, then a motion that Ohrendorf and Ruane attended to the execution of the deed, which was carried, then a motion to adjourn, etc.—all in unexceptionable form. This was read in evidence seemingly without objection, though that is disputed, and the record is a little vague.

Plaintiff also offered testimony tending to prove that Peters was agreeable to the whole scheme, not only the testimony of Ohrendorf and Ruane, as above stated, as to what transpired at Peters' house on the nineteenth, but also the testimony of Ruane and Roberts the notary, as to what Peters said on Saturday the twenty-first, when they took the deed to him to be signed, and also the testimony of Roberts as to what Mrs. Peters said on Monday as the reason why Peters could not be seen, nor the seal obtained from him. This latter testimony tended to negative the inference that the sending to the store on Sunday for the seal and holding possession of it and failing to execute the deed on Monday was the result of opposition on Peters' part to executing the deed. But when the defendants offered the testimony of Mr. Tracy, who was the nephew of Mrs. Peters and the

person whom Mr. Peters had sent to the store for the seal, to prove what Mr. Peters said to him on the subject of executing the deed, it was on objection of the plaintiff ruled out, and with the like result the defendants offered to prove by his witness' conversations with Peters on that Sunday about the indebtedness of the concern to the Manhattan Rubber Manufacturing Company, and that the witness had at the request of Peters on that day sent telegrams to creditors in New York, among them the Manhattan Company, and the contents of those telegrams. So also the testimony of Mr. Givins, for the same purpose, was on the plaintiff's objection excluded. Mr. Givens did testify, however, that he saw Mr. Peters in his room about 7 o'clock on Sunday evening, the day before the deed was executed and talked with him on the subject; that Mr. Peters received him in his room, sitting in a chair, and seemed to be bright in mind, though weak in body; that he arose from his chair and got the proposed deed, read and discussed it with witness. This testimony tended to negative the idea that the reason he did not see Roberts, the notary, was that he was too ill.

An affidavit for a continuance on the part of defendants was read in evidence embodying the testimony that Mrs. Peters would have given, if present, to the effect that Mrs. Peters sent a message to Mr. Ruane on Sunday, the twenty-second, not to send the deed to his house before 11 o'clock on Monday, and that Peters did not consent to the execution of the deed, or to any resolution authorizing the same, but expressly repudiated it, and authorized witness to send various dispatches to that effect, and on Saturday the twenty-first, refused to sign the deed and so refused twice on Monday the twenty-third.

Defendants on the cross-examination of the relator Grimm, asked him as to the value of the property conveyed to him, but this was objected to by plaintiff on the ground that it was immaterial and the objection was sustained, and

in a colloquy which then ensued between the court and counsel the following was said:

By the court: "As I have said before, these directors, claiming to be creditors of that corporation, protected themselves in this deed; of those facts there is no dispute. If as a matter of law that renders it void, that settles it; if as a matter of law it does not render it void, what additional light are you throwing on the transaction?"

Defendants' counsel: "As to whether or not their act renders it void, I suppose the circumstances in which the corporation was at the time is a material inquiry."

By the court: "My own idea is, under the decisions of the Supreme Court, they had the right to do it. So far as I am advised I am prepared to declare to this jury that they had the right to do that thing. If they had not, you can take the case up. I'll submit to the jury the question of the *bona fides* of these debts."

The instructions given were as follows:

"1. The court instructs the jury that a corporation in failing circumstances, has a right to prefer one or more creditors over other creditors, and to that end execute a chattel deed of trust, securing one or more of its creditors to the exclusion of others, and such conveyance is not rendered invalid because in effect it hinders and delays creditors not so preferred.

"2. The court instructs you that a corporation in failing circumstances may prefer one or more creditors in preference to others in discharging its obligations, if such preference is made in good faith while the property of the company is in its possession; and the mere insolvency of a corporation does not of itself transfer its assets into a trust fund for the benefit of all its creditors; nor can it be said that such a chattel deed of trust, though it conveys all the property of the corporation to a trustee for the benefit of particular creditors in preference to other creditors, is an

assignment within the meaning of the statute of assignments for the benefit of creditors; there is a clear distinction between such a conveyance by deed of trust and an assignment for the benefit of creditors generally.  A corporation may convey its property in trust by chattel deed of trust, preferring one or more creditors in preference to others, precisely the same as an individual or partnership may do.

"3.    The court further instructs you that if you believe from the evidence, that the chattel deed of trust in favor of J. Hugo Grimm, trustee, read in evidence, was executed by authority of the board of directors of the Peters Rubber and Supply Company, and that it was executed solely to secure the payment of *bona fide* indebtedness of said company, then said deed of trust was not fraudulent, although the effect of its having been given was to give preferences to certain other creditors over other creditors of the Peters Rubber and Supply Company.

"4.    The court further instructs you, the jury, that it was not necessary to the validity of said deed of trust to affix the corporate seal of the Peters Rubber and Supply Company thereto, as such deed of trust requires no seal of the corporation to be valid.    The board of directors, or a majority thereof, had the right to determine by resolution to execute such deed of trust, and if you find that they did execute such deed of trust in pursuance of such determination, and that such deed of trust secures nothing but *bona fide* indebtedness, then it may be valid without the corporate seal.    Therefore, whether the seal affixed to said deed of trust is, or is not, the regular seal of said corporation, is of no consequence and need not be considered by you in determining as to the validity of said deed of trust.

"5.    The court further instructs you that a corporation in control of its property, though insolvent, may prefer some creditors in preference to others by executing a chattel deed of trust securing such preferred creditors, and this though

the creditors preferred be directors or officers of the corporation; such officers or directors stand in the same attitude as any other creditor save this, that they should be required to show by testimony the *bona fides* of the debt claimed to be due them and which is secured or purports to be secured by such deed of trust.    In all other respects they stand precisely on the same footing as any other creditor.

"6.    The court further instructs you that if you believe and find from the evidence, that the debts secured in favor of James Ruane and in favor of Berthold Lange, by the terms of said deed of trust, read in evidence, were both *bona fide* indebtedness for money actually lent in good faith to the Peters Rubber and Supply Company, to the full extent of the claims secured to said Ruane and said Berthold Lange, then the mere fact that Ruane was one of the directors, and an officer of the Peters Rubber and Supply Company, and that Ohrendorf was another director and officer of said company, and was interested in the indebtedness secured in favor of said Berthold Lange, would not affect the validity of said deed of trust.

"7.    The court further instructs you that if you believe from the evidence, that the goods, as described in the sheriff's return and in the bond of indemnity, read in evidence, were covered by the deed of trust to J. Hugo Grimm, trustee, read in evidence, and that said deed of trust was executed in good faith by order of the board of directors of the Peters Rubber and Supply Company to secure *bona fide* indebtedness due by the Peters Rubber and Supply Company, and that all the debts therein described were *bona fide* debts then by virtue of said deed of trust the legal title to said property passed to and vested in said J. Hugo Grimm, as trustee, for the use named in said deed of trust; and if you further believe from the evidnce, that the Manhattan Rubber Manufacturing Company, plaintiff in the attachment suit against said Peters Rubber and Supply Company, caused

said goods to be attached and withheld from said J. Hugo Grimm, trustee, then it is your duty to return a verdict in this case in favor of plaintiff and against both the defendants.

"8. The court instructs you, the jury, that if you find for the relator, J. Hugo Grimm, trustee, under the evidence and instructions of the court, you should then assess his damages at such sum as you believe, from the evidence, was the reasonable market value January 14th, 1896, in the city of St. Louis, of the goods seized under the attachment in question and covered by the indemnifying bond read in evidence, and to which value so found allow interest at the rate of six per cent per annum from January 14th, 1896, to the date of your verdict. In other words, the reasonable market value of said goods in St. Louis, January 14th, 1896, with interest thereon at the rate of six per cent per annum from that date to the day of your verdict, is the damage relator is entitled to recover, if you find in his favor.

"9. The court instructs you that all the instructions given in this case are to be read and considered together in determining your verdict, as each and all of said instructions constitute a part of the law applicable to the case.

"10. Under the evidence the directors of the Peters Rubber and Supply Company could hold a meeting of the board of directors at any time or place when all the directors were present; and if you believe and find that on December 19th, 1895, the board of directors of that company was composed of Charles C. Peters, James Ruane and Charles W. Ohrendorf, and that they met as a board at the residence of said Peters and unanimously adopted a resolution that a deed be made and executed by the officers of the company conveying to said J. Hugo Grimm all the property of said company, in trust, for the purpose of selling the same and applying the proceeds to the payment of the debts of the said company therein mentioned, which deed is the one read in evidence,

any subsequent action or conduct by said Peters in the direction of a repudiation of his vote at said board meeting in favor of the execution of said deed was ineffectual to invalidate his said vote or the action of said board."

The court, of its own motion, gave the following instruction to the jury: "The court instructs the jury that whenever the directors of an insolvent corporation attempt by their own votes to prefer themselves as creditors of such corporation the burden of showing that the debts of said directors so preferred are actual and *bona fide* is cast upon the persons claiming the benefit of such act, and unless the jury believe from the evidence in this case that the relator has shown by a preponderance of evidence that the debts due Ruane and Lange set out in the deed of trust read in evidence were the actual and *bona fide* indebtedness of the Peters Rubber and Supply Company, then the jury must find that the said deed of trust was fraudulent, and if they believe from the evidence that the relator herein in any way participated in such fraudulent transaction, if the jury believe it was fraudulent, then the jury must find for the defendant."

The jury returned a verdict for the plaintiff for $11,897.55. In due time motions for new trial were filed by defendants, which being overruled, and final judgment being entered in conformity with the verdict, defendants filed their bill of exceptions and brought the case here by appeal.

I. The utterances of the learned judge who tried the cause, contained in the colloquy quoted in the above statement of facts, are not only indicative of the narrow channel into which he felt constrained to confine the province of the jury, and his understanding of the force of the instructions given, but being spoken in the presence of the jury, were very liable to have prejudiced it against the defendant's side of the one other question, besides the honesty of the debts named, which the jury under the instructions was left to pass

on, viz., the authority claimed to have been given at the alleged board of directors meeting at the house of Mr. Peters December 19, to execute the deed.

It must be remembered that the deed in question was of the kind that this court has pronounced *prima facie* fraudulent [Schufeldt v. Smith, 131 Mo. 280], and the burden of showing it to be honest was on those claiming under it. That burden was attempted to be lifted by the testimony alone of the two men who committed the act, one of whom, Ruane, was interested to the amount of $15,000; and the other, Ohrendorf, to the amount of about $25,000, and as he himself testified, if he lost he would lose everything he had on earth, and bankrupt himself and family. If there had been no other circumstances, as there were, to cast doubt on the transaction, the defendants had a right to argue to the jury that the evidence was untrustworthy, and insufficient to overcome the *prima facie* presumption of fraud. But the defendants would have argued, on that line at great disadvantage, with this remark of the trial judge in the jury's mind. The remark was equivalent to assuming that the authority to execute the deed was satisfactorily proven; and that the only question left open to the jury was as to the honesty of the debts. It was to guard the jury from such influence, that section 2188, Revised Statutes 1889, was passed.

II.   Under the written instructions the case was given to the jury on the theory that if the deed was ordered by the board of directors and if the debts intended to be secured were honest, the law was satisfied. That was the theory on which the plaintiff's counsel insisted and it was the theory adopted by the trial court, as was shown by the instructions given, and by the colloquies between the court and counsel running all through the trial.

But that theory does not satisfy the law. It leaves out of view the duty of good faith in the directors towards the corporation, the stockholders and the other creditors. The

debts preferred may have been honest obligations, and the deed may have been executed in due form by order of the board of directors, yet if the directors had not acted in good faith according to their best judgment for the interest of the corporation, if they acted with but one motive, and that to secure the favored creditors, in utter disregard of the interest of the corporation and its stockholders, the deed was fraudulent and invalid.

This proposition of law is perfectly consistent with the doctrine that if directors, acting in good faith towards a corporation and its stockholders, cause a deed to be executed giving preference to themselves to secure honest debts, the deed is not because of that preference invalid. But in such case the director's first duty is to the corporation and its stockholders, and this duty being honestly regarded, his own interest may be next protected, and as long as the two go harmoniously together, in that rank, the law is satisfied.

When an individual fails in business and gives preference to some of his creditors, he generally prefers first, those whom it is his interest to prefer, and a corporation does the same if the board of directors are mindful of their duty. It is as much the duty of a director to look after the welfare of the corporation under such circumstances as it is natural for an individual to look after his interests under like circumstances. What the financial condition of this corporation was when the deed of trust in question was executed, the plaintiff did not try to prove, and the defendants were not allowed to prove, the court holding that to be immaterial. What business relations the various creditors held towards the corporation and its stockholders, past or prospective, we have no means of knowing from the record.

A case may be supposed in which the affairs of the corporation are such that it is immaterial to its interests to whom a preference is given. In such case the directors may prefer themselves without breach of faith to the corporation.

Or a case may be supposed in which the best interests of the corporation would be promoted by giving preference to its directors; in such case it would not only be their right but their duty to give such preference.   But it is just as easy to suppose a case in which the interest of the corporation would suffer by a preference given to its creditors, and in such case it would be bad faith in the directors to give such preference, even if the debts due them were honest.

It is not intended  here to imply that in the trial of a cause like this the court or jury could go into the trial of a question of fact as to whether or not the interest of the corporation was best served by the preference given.   But it is intended  to say that that is a question that the board of directors ought to consider, and their decision of it should take precedence in their minds in the further question of whom they should prefer; and when they are called to account in a trial like this they must show that they acted in good faith.

Neither is it intended by what is here said to imply that a board of directors can lawfully act only in accordance with the expressed wishes of the stockholders, but the proposition here laid down is that the directors are bound to exercise their honest judgment for the best interest of the corporation and of the stockholders who have intrusted their interest into their hands and they can not lawfully put their own interests ahead.

According to the plaintiff's evidence the deed in question was conceived and executed in apparent forgetfulness that these directors owed a first duty to the corporation.

Mr. Ohrendorf in his testimony expressed the whole theory of his case, when he said, "Self-preservation is the first law of nature; I was indorser on those papers, and if crowded would lose everything I had on earth, bankrupt me and my family. . . .  I did it because I was indorser on those

papers.  Mr. Grimm was fully advised of my intent and pur-
pose; he advised me what to do." And speaking of the prep-
aration he had made for his visit to Mr. Peters' house, he
said: "We had the resolution appearing in the minutes
prepared before. We were, so to speak, loaded for bear."
He avowedly had but one aim, which was self-protection, and
his metaphor showed his purpose toward the corporation and
the stockholders. ·

III. If, however, Peters, who owned nearly all the stock,
was in a condition to protect his own interest, and, with full
knowledge of the circumstances, acquiesced in all that was
done, then no question could arise as to the good faith of the
other two directors regarding his interest. But whether or
not those conditions existed was a question of fact which
should not have been decided in favor of the plaintiff until so
found by the jury.

There was evidence on the part of the plaintiff tending
to show those conditions, but the evidence offered by the de-
fendants contra was rejected. The plaintiff's evidence on this
point was really not intended for this issue, because on the
plaintiff's theory there was no such issue in the case.  The
evidence was not offered in an effort to show that the two
interested directors were consulting Peters as a stockholder,
with a desire to protect his interest, for they made no pretense
to such a desire, but it came out incidentally in their effort
to show that there had been a legal meeting of the board of
directors in which Peters as director participated and voted
with the majority.  When, however, the defendants offered
evidence tending to show that Peters was opposed to the
whole scheme, and did all that a sick and dying man could
do to defeat it, the evidence was rejected on the theory, judg-
ing from the tenth instruction given, that it tended to nullify
his own vote in the alleged directors' meeting.  Conceding
that what Peters may have said and done after the meeting
could not affect the effect of his vote if he gave it at that

meeting, still the testimony was competent for another purpose, and it was error to have rejected it.    The duty of guarding with honest care the interest of the stockholders of that corporation, did not end with the adjournment of that board meeting, if this was a board meeting, but continued, even if all the plaintiff's evidence was true, up to the time of the delivery of the deed, and if they knew or had cause to believe that after that meeting Peters had changed his mind and was opposed to the deed, their duty of acting in good faith towards him as chief stockholder was not relieved upon the ground that he at one time consented to the act.    Peters was as accessible to them on the day they executed this deed as he was on the Thursday before at his house.    Even if we assume for the present that they had a right to suppose when they left him on Thursday that he was in accord with their purpose, there were circumstances brought to their knowledge sufficient to cause them to suspect that he had changed his mind, and if they meant good faith toward him they ought to have gone to his house again on Monday and learned from him why he sent on Sunday and took possession of the seal, and why he refused on Monday to see the notary or send back the deed and seal.    While they were waiting at the store on Monday for Roberts, the notary, to go out to his house and return with a message as to what Mrs. Peters said, and while they were waiting to have a duplicate seal made, if they had shown a disposition to protect first the interest of the corporation and of its stockholders, they would have seen Mr. Peters on that Monday morning before executing the deed.    But they had been advised that they had a right to consider their own interests first and their conduct was consistent with that purpose.

The rejected testimony of defendants consisted in what Peters said to Tracy and Givens and Mrs. Peters on the subject of executing the deed on the Saturday and Sunday before its execution, and of telegrams he caused to be sent

to the Manhattan Rubber Manufacturing Company, and another creditor in New York on the subject, and that he refused once on Saturday and twice on Monday to execute the deed.    Although this testimony consisted chiefly in what Peters said to the witnesses yet it was evidently not rejected on the ground that it was hearsay, because  the plaintiff had introduced the testimony of Ruane and Roberts tending to show what Peters said to them on Saturday the twenty-first, and what Mrs. Peters said to Roberts on Monday the twenty-third, but it was rejected on the ground that it was immaterial.    The plaintiff's testimony received and defendants'. testimony rejected were both competent as tending to show the condition of Peters' mind as to the transaction, and bearing on the question of whether or not Peters so acquiesced in the deed as to relieve the two active directors from their duty to protect him.    But even on the testimony received, the question as to whether or not there was a valid board meeting at Peters' house, and if so as to Peters' acquiescence, was sufficiently in doubt to be left to a jury; under proper instructions as to what constitutes a valid meeting.

The by-laws read in evidence to the effect that when the three directors were present a meeting could be held without notice did not mean that two directors could force a meeting by going into the presence of the third and declaring the meeting on.    To constitute a valid board meeting within the meaning of that by-law all three directors being together on a particular occasion must first agree that a board meeting be then and there held and thereupon the meeting be convened.    [Calumet Paper Co. v. Haskell Show Ptg. Co., 144 Mo. 331.]    Instruction number 10 given by the court which undertakes to declare the effect of that by-law erroneously left the jury to infer that it was a valid board meeting if the three directors were only present.    The circumstances under which the two interested directors went into the sick bedroom of Peters on that occasion left it a serious question for the jury if Peters understood and consented to a board meeting

then and there.   Peters died on December 26, three days after the deed in question was executed; therefore the plaintiff's case in so far as it rests on what transpired at the first meeting at Peters' house on December 19, is supported alone by the testimony of Ohrendorf and Ruane with the presumption of fraud against them and their vital interest in the result to cloud their testimony.   Weighing the testimony of those two witnesses in this light and in view of Peters' condition, his illness and death, his sending to the store and taking possession of the seal, his refusal to see Roberts, or to give up the seal, whether because as might be inferred from Roberts' testimony he was too ill to attend to business, or whether because as might be inferred from Givens' testimony he did not choose to do so, a case is presented in which the defendants had a right to have the jury say whether or not the evidence was sufficient to prove that Peters was a willing participant in the deed.

That which purported to be the minutes of the board meeting at Peters' house December 19, was read in evidence, seemingly without objection.   But if it was entitled to any probative effect at all, it was not conclusive, and was entitled to only the weight the jury might see fit to give it.   It was written by Ohrendorf under the advice of his counsel the relator in this case, several days after the deed was executed, and is in the face of Ohrendorf's own evidence in several points.

Therefore when the trial court undertook, as it did, to cover the whole case in an instruction, and omitted to instruct the jury that the first duty of the directors was to guard the interests of the corporation and its stockholders and that if the deed in question was executed in violation or disregard of that duty it was invalid, if the court was going upon the assumption that Peters the chief stockholder was a consenting party, the court assumed a fact that should have been left to the jury to find.

IV.   There were eleven instructions given, nine of
which were asked by the plaintiff and two given of the court's
own motion.   The first, second, sixth, eighth, ninth, tenth
and eleventh, correctly state the law as far as they go.   The
third in effect instructs the jury that the deed is valid if
made by order of its board of directors and the debts secured
are *bona fide;* and is erroneous because it leaves out of view
the directors' paramount duty to the corporation as above
shown.   The fourth assumes the regularity of the board
meeting on the twenty-third, instructs the jury that the
majority of the directors had the right to order the deed and
that if it was made by their order and to secure *bona fide*
debts, it was valid.   It also instructs the jury that the ques-
tion of whether the seal fixed to the deed was or was not the
regular seal of the corporation was of no consequence and not
to be considered by the jury in determining the validity of
the deed.   If there was no valid meeting of the board on the
nineteenth of December, if there was no adjournment of
that meeting to the twenty-third (and those questions depend
on the faith the jury would give to the testimony of Ohren-
dorf and Ruane), then there was no valid board meeting on
the twenty-third.   Although the meeting of the twenty-third
is not by those words mentioned in this instruction, yet the
jury could not help understanding that the court referred to
that meeting and declared its proceeding valid.   The seal
was not necessary to the validity of the deed and if the in-
struction had only been to the effect that if the jury found
the deed was, under all the instructions, otherwise valid, the
absence of the corporate seal would not render it invalid, it
would have correctly stated the law.   But to say that in de-
termining the questions relating to the validity of the deed
the fact of the absence of the true seal and the substitution
of a *fac-simile* was of no consequence and not to be con-
sidered, was going too far.   The good faith and honest pur-
pose of the two directors was in question and the substitution

of a *fac-simile* for the real seal was a circumstance which the court ought not to have forbidden the jury to consider.

The fifth instruction more specifically than the third declares that the only burden on the preferred officers or directors of the corporation was to prove that their debts were honest, and that "in all other respects they stand precisely on the same footing as any other creditor." This is equivalent not merely to ignoring the directors' obligation of trust to the corporation, but declaring that no such obligation exists under such circumstances.

The seventh instruction differs from the third and fifth in that it requires the jury to find that the deed was executed in good faith by order of the board of directors, and that the debts were honest. This approaches nearer a declaration of the law of the .case than the other instructions. But the good faith in relation to the execution of the deed is left so vague that taken in connection with the other instructions it means nothing. In fact, it is evident from the whole record that the court understood that the only question of good faith in the matter was as to the honesty of the debt. The instructions taken as a whole declare the law exactly as the learned trial judge expressed his views in the colloquy with counsel hereinabove discussed.

V. The defendants asked a number of instructions on the theory that a director in an insolvent corporation could not acquire a preference for a debt due himself when his own vote in the directors' meeting was necessary to obtain it, all of which were refused.

The proposition set forth in these instructions was the one to which the able counsel on both sides have devoted their main arguments. We are referred to a large number of decisions in other States, as well as in our own, bearing on this subject, but since after examining them we find our own decisions satisfactory, there is no necessity at this time to discuss the rulings in other jurisdictions, and we will briefly

trace the development of the law through the more recent of our own books.

The case of Foster v. Mullanphy Planing Mill Co., 92 Mo. 79, is as far back as we need go for our present inquiry. In that case an insolvent corporation had, in conformity to a resolution of the board of directors, executed a deed of trust preferring certain creditors, among whom were some of the directors; and predicated on that deed, a suit was brought by attachment against the corporation by one of the unfavored creditors on the ground that the corporation had made a fraudulent assignment. The case was submitted on an agreed statement wherein it was agreed that the deed was not fraudulent in fact, but was executed by the directors in perfect good faith. It was there contended by the attaching creditor that when the corporation became insolvent its property became, in that instant, trust property in the hands of the directors for the benefit of all the creditors alike, and no preference could be given. But this court in its opinion by SHERWOOD, J., declared against that contention, and that ruling has since been reiterated in several cases. It was also contended that the deed was void because it essayed to prefer creditors among whom were some of the directors who were present and participated in the meeting, and voted for the resolution under which the deed was executed. That point was also decided against the complaining creditor. But, inasmuch as it appeared from the facts in the case that, although the preferred creditors were present and voted for the resolution, yet, their votes were not necessary to the result, a majority of those present, not counting the favored ones, having so voted, which fact is referred to by the court in its opinion, that case can not be taken as conclusive of the point now made by appellant.

In Milling Co. v. Commission Co., 128 Mo. 473, the complaining creditor attacked the deed of trust on two grounds, viz.: First, that having been made in view of a general assignment, which immediately followed, it was to be held

as a part of the general assignment; second, because it pre-ferred those creditors on whose paper one or two or more of the directors were indorsers. Both of these points were de-cided against the attaching creditor, BURGESS, J., delivering the opinion, but in discussing the second proposition the de-cision treats it from the standpoint of the creditor whose debt is preferred and who was not a stockholder or director in the corporation, going no further than to say that the mere fact that his paper happens to have the indorsement of some of the directors, is no just cause for depriving him of the right to preference. That decision thereof is not quite con-clusive of the point here in discussion. In fact, the court in that connection say that the right of an insolvent corpora-tion to execute a mortgage giving a preference to one or more of its directors is very questionable.

Schufeldt v. Smith, was twice in this court, 131 Mo. 280, and 139 Mo. 367. On the first appeal in the opinion by MAC-FARLANE, J., there were two points decided: First, that the fact of insolvency did not convert the property of a corporation into a trust estate in the hands of the directors to be admin-istered for the equal benefit of all its creditors; second, that directors of an insolvent corporation may by their own votes secure a preference to themselves over other creditors, but that their act in so doing is *prima facie* fraudulent, and the burden to prove its fairness is on him who claims under it. It would seem from the statement of facts in that case that there were three directors who passed the resolution under which the deed of trust was executed, and that only one of them was interested in the debts secured; though that fact, if it was so, was not very prominently pressed on the notice of the court. Therefore, it leaves room to contend that that case is not decisive of the point now under discussion. In discussing the so-called trust fund theory therein decided the court uses this language: "The board of directors are undoubtedly trustees of the corporation and stockholders,

and when acting for them are bound to exercise the utmost good faith. Any attempt in dealing with its property or affairs to secure themselves personal advantages over other stockholders should at least be subject to the most rigorous scrutiny." [Citing Hill v. Rich Hill Mining Co., 119 Mo. 9.]

The last decision of this court to which we are referred on this point is Butler v. Land and Mining Co., 139 Mo. 467. In that case there were but three directors and they owned all the stock; they united in directing deeds to be executed which in effect applied all the property of the corporation to the payment of debts due themselves, to the exclusion of outside creditors, for whose satisfaction nothing was left. There was no evidence or contention in that case that there was any bad faith or fraud in the act of the directors except constructive fraud which it was contended arose out of the act itself. This court in that case, speaking through ROBINSON, J., again pronounced against the so-called trust fund theory, reaffirming Foster v. Mullanphy Planing Mill Co., *supra*, and Alberger v. Bank, 123 Mo. 313; then advancing to the second proposition, laid down the law that directors of an insolvent corporation may dispose of its property in payment or security of debts due themselves to the exclusion of other creditors bound only by the limit of good faith. The essential difference between that case and the case at bar is that there the three directors who owned all the stock acted in union, so no question could arise as to the good faith of their act in guarding the interests of absent stockholders and so in all the other cases referred to in this paragraph there was no such question.

It will be seen from these cases that the question as to the power of directors to secure themselves out of the assets of an insolvent corporation while its affairs are still in their hands for management, to the exclusion of other *bona fide* creditors, has been presented in various phases to this court, and whilst the decisions have been carefully limited to the

State ex rel. v. Rubber Mfg. Co.

facts of each case, yet the court has always pronounced in favor of the power, and even in the last case where there was no doubt but that the votes of the interested directors were necessary to give the preference, the law was laid down that they had the right to do so if they acted within the limits of good faith.    But in these and all other cases that have come before this court bringing into question the powers and duties of directors they have been treated as trustees of whom the utmost good faith was demanded, and nothing has been said in any of its decisions that would justify a director in preferring himself to the detriment of the best interest of the corporation or its stockholders.

We hold therefore that the instructions asked by the defendants on the theory that the deed of trust in question was invalid solely for the reason that it essayed to give preference to the directors over other creditors of the insolvent corporation, were, properly refused.    This includes those numbered 1, 2, 6, 12 and 14.    The rest of that series of refused instruction were as follows:

"3.    The court instructs the jury that whenever the directors of an insolvent corporation attempt by their own votes to prefer themselves as creditors of such corporation, the law presumes that such act of directors in attempting to prefer themselves is a fraudulent act, and the burden of showing that it was honest and fair is cast upon the persons claiming the benefit of such act, to show by a preponderance of evidence that such preference was honest and that such directors acted in good faith; and unless the jury believe from the evidence in this case that the relator has shown by a preponderance of evidence that Ruane and Ohrendorf acted in perfect good faith and honesty in voting to execute the deed of trust referred to in the evidence, then the jury must find that said deed of trust was fraudulent, and if they believe from the evidence that the relator herein in any way

participated in such .fraudulent transaction, if the jury believe it was fraudulent, then the jury must find for defendant.

"4.    The court instructs the jury that the knowledge of Grimm, the trustee in said chattle deed, in respect to the unlawful scheme and purpose of said Ohrendorf and Ruane, if such there were, is imputable to the creditors named therein and they are affected thereby.

"5.    The court instructs the jury that if from all the evidence they believe that the chattel deed herein was not made and executed in good faith, their verdict should be for the defendant.

"7.    The court instructs the jury that if they believe from the evidence that at a meeting of the board of directors of the Peters Rubber & Supply Company, held December 19, 1895, a resolution was passed authorizing the execution of a deed of trust of the company's property to secure the payment of the claims of certain creditors therein named, and that thereafter, to wit, on December 23, 1895, a deed of trust was executed, the same being the one in evidence in this case, which deed did not however conform to the resolution, in this that creditors therein named were not named in the same order, then the jury are instructed that the deed in evidence was executed without authority, and their verdict should be for defendants.

"8.    The court instructs the jury that the fact that notes were made by the Peters Rubber and Supply Company to Ruane and Ohrendorf is not in this case *prima facie* evidence of a valid indebtedness from the Peters Rubber and Supply Company to Ruane and Ohrendorf.

"9.    The court instructs the jury that if they believe from the evidence that the resolution set out in the minutes of the meeting of December 19th, 1895, authorizing the execution of a trust deed therein referred to, was not adopted by

the board of directors at such meeting, then the jury are instructed that there was no authority on the part of the directors to execute the deed of trust in question.

"10. The court instructs the jury that the act of the directors Ohrendorf and Ruane in voting themselves preferences made the deed of trust read in evidence *prima facie* fraudulent in fact, and that the burden of proof is upon the plaintiff in this case to show to the satisfaction of the jury that the debts so secured are fair, honest and justly due, and unless it is proved to their satisfaction from the evidence that a valuable consideration passed from Ruane to the Peters Rubber and Supply Company for the notes executed by it to Ruane, and by him indorsed and delivered to Ohrendorf, and by him in turn transferred to Lange, and secured by the deed of trust read in evidence, then the jury should find for the defendants.

"11. The court instructs the jury that it is not necessary to establish a fraudulent intent by direct and positive evidence, but that an intent to defraud may be established by inference in the same way as any other fact, by taking into consideration the acts of the parties and all the facts and circumstances of the case."

Number 3 states the law correctly as far as it goes, but the duties of the directors in respect to the act in question should be set out in the instruction, so that the jury would know what was the test of the good faith and honesty required. Number 5 is subject to the same criticism. Number 15 is a duplicate of number 3. Numbers 4, 9 and 11 should have been given. Number 7 was correctly refused because the comparing of the deed with the resolution to ascertain if the one conformed to the requirements of the other was the duty of the court and not of the jury. Numbers 8 and 10 were properly refused; the notes were not executed by Ohrendorf and Ruane to themselves and were therefore not subject to the *prima facie* presumption of fraud as was the

deed, but they were made by the president, Peters, and were *prima facie* evidence of valid obligations.

VI.　It is insisted by appellants that the petition states no cause of action, because it shows that the condition of the bond was to indemnify the claimant against damages in consequence of "the seizure and sale" of the property, and it does not aver that there had been a sale.

The American Surety Company, the surety on the bond, especially urges this point, insisting that its obligation as surety is to be construed *strictissimi juris*. Under the facts of this case there is no difference between the obligation of the surety and that of the principal; if one is bound, the other is equally so.　As a general rule neither principal nor surety is obligated beyond what is nominated in the bond, but that is not always so either as to the one or the other.　And it is not so in this case.　When parties execute a statutory bond they are chargeable with notice of all provisions of the statute relating to their obligation, and those provisions are to be read into the bond as its terms and conditions.　The statute on this subject is the Act of 1855 amended in 1858, and appears on pages 2178 and following Revised Statutes 1889; section 11 of that Act rather clumsily adopts for the condition of the bond that prescribed for a bond to be given a sheriff about to sell property under execution, as prescribed in the Revised Statutes of 1855, and the incongruity seems to have escaped the scrutiny of the subsequent revising committees.　The bond in this case is conditioned in the form prescribed by that statute, and of the obligation of the parties is limited to what is expressed on the face of the bond there could be no breach until a sale of the property seized.　But section 4 of the Act provides that the party claimant injured may sue in consequence of a levy or sale.　And similar legislative intent is gathered from other parts of the same act.　These provisions are a part of the bond of which both principal and surety must take notice.

The trial court therefore properly overruled this objection of defendants, and for the same reason the objection to the bond in evidence was properly overruled.

VII.　As to the objection of appellants that the trial court erred in not permitting the witness to answer the questions concerning his motive in putting Lange's name in the deed instead of his own, and as to why he did not place the Manhattan Rubber Manufacturing Company closer to the top of the list, we deem it proper to say only that when the witness on the stand is the person who did the act that is charged to have been done fraudulently, it is proper to interrogate him as to his motives by questions of this kind, but it does not sufficiently appear from the transcript that the court refused to allow this witness to answer those questions.

VIII.　What purported to be the minutes of the alleged meetings of the board of directors on December 19 and December 23, were properly admitted in evidence. Under the issues in this case those purported minutes were not evidence of the truth of their own statements, but they were evidence of the fact that they were written in the minute book as minutes of those meetings, and that fact the jury were entitled to consider with the evidence which tended to show that there were such meetings and what occurred at them.

For the reasons above set forth the judgment of the circuit court is reversed and the cause remanded to that court to be retried in accordance with the law as herein expressed.

Brace, P. J., concurs; Robinson, J., concurs in result; Marshall, J., concurs in result only for the reason expressed in his separate opinion filed.

#### SEPARATE OPINION.

Marshall, J.—I concur in reversing and remanding this case, but I place my concurrence upon the sole ground that, under the issues joined, the circuit court erred in

excluding evidence as to whether the deed of trust was executed by authority of the board of directors.

I do not agree that it is necessary for the beneficiary under the deed of trust to show, in the first place, that in making the preference the directors took into consideration the interests of the corporation and of the stockholders as well as those of the preferred creditors. The corporation acting through its directors, had a right to make a preference, and if it did so, and it was attacked as fraudulent, the burden of proof rested upon the person charging fraud, to make out a *prima facie* case, before the beneficiary could be called on to disprove it. [Gutzweiler's Adm'r v. Lackmann, 39 Mo. 91; Albert v. Besel, 88 Mo. l. c. 153; Hazell v. Bank, 95 Mo. l. c. 65; State ex rel. v. Hope, 102 Mo. l. c. 428; Van Raalte v. Harrington, 101 Mo. l. c. 611; Mansur-Tebbetts Imp. Co. v. Ritchie, 143 Mo. l. c. 610.]

The question of the *bona fides* of the transaction is always an issue in a case where a conveyance is charged to be fraudulent, but the rule of law is the same in such cases as it is in all cases under our jurisprudence, that the burden of proof is upon him who charges the conveyance to be fraudulent. This is true whether the beneficiary be a third person or a director or stockholder of the corporation. I do not agree that such a preference is *prima facie* fraudulent. Such was said to be the law in the last paragraph of the opinion in Schufeldt v. Smith, 131 Mo. 280, but in my opinion it was an oversight on the part of the learned judge who wrote that opinion, for it is in direct conflict with the reasoning and authorities employed and cited throughout the whole opinion, and particularly, when, after pointing out that an individual may prefer any creditor he sees fit, even though it be his wife, he said: "No reason can be seen why a corporation may not also prefer its friends. There is no more equity in allowing an individual debtor to prefer his creditors, wife or children, than in allowing a corporation to prefer its

stockholders and officers.   To permit equities to control would defeat all preferences.   While the owner of property retains the power of its disposal, he may apply it to the payment of any honest debt, is the rule upon which the right to make preferences among creditors rests.   The rule should apply as well to corporations as to individuals, and any change should be made by the legislature and not by the courts. If the debt is an honest one, and the corporation had the power to contract it, it has the right to pay or secure it, and no fraud can be imputed to it from the fact that it is paid or secured in preference to another."

The power being conceded there is no more reason, under the genius of our law, for casting the burden of proving the honesty of the debt, or any of the elements of good faith, upon a director or stockholder than there is for casting it upon any other creditor.   The person charging fraud has always been required to prove it; and solely because the circuit court placed the burden of proof upon the beneficiary instead of upon the attacking creditor, this court reversed the judgment in Mansur-Tebbetts Imp. v. Ritchie, 143 Mo. l. c. 610.

Likewise I can not follow the reasoning which requires the beneficiary to prove, in the first instance, that the directors considered the welfare and interests of the corporation and of the other stockholders, as well as those of the secured creditor, and at the same time does not grant to the attacking party the right to rebut such proof, and which does not allow the jury to pass upon the question.   If there is any such underlying question in a proceeding charging fraud, then it is an issue of fact, and if so, the attacking party must be accorded the privilege · of rebutting the proof offered by the beneficiary, and the jury must decide whether the directors did act for the welfare and best interests of the corporation and its stockholders, as well as for those of the preferred creditor.   And if the jury finds that they did not, then, to

my mind, it logically follows that the preference was not made in good faith and hence is fraudulent. If this be true, it is then the jury that determines what preferences shall be made, and not the debtor who so decides, yea, the jury might decide that the best interests and welfare of the corporation and its other stockholders demanded that there should be no preferences, and if this be so, what becomes of the doctrine of allowing preferences? It would be merely an *ignis fatuis*.

It is as true in the civil as in the criminal law that a presumption of innocence of fraud surrounds the accused, and the burden of proof always rests upon the party charging the fraud to prove it, and the accused is only compelled to repel the attack. As is pointed out by Greenleaf, this is not only the rule of the English law, but always was the rule even under the Roman law [1 Greenleaf on Ev. (14 Ed.), sec. 74], and this is the rule upon which this court has always heretofore proceeded, as is shown by the cases cited.