## Henry W. Rokker, Impleaded, etc., v. J. W. Butler Paper Co. et al.

1. CORPORATIONS—*Officers Can Not Take Advantage of Their Superior Knowledge.*—Officers of corporations can not take advantage of their superior knowledge to the detriment of other creditors.

**Bill to Enforce Payment of Judgments.**—Error to the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1899. Affirmed in part, reversed in part with directions. Opinion filed April 4, 1900.

**Statement.**—In February, 1894, plaintiff in error purchased a printing and binding establishment located in Chicago. Soon thereafter the Rokker-O'Donnell Printing Co. was incorporated, the amount of its capital stock being fixed at $30,000, divided into 300 shares of the par value of $100 each. April 4, 1894, plaintiff in error transferred to said company said printing plant or establishment, in full payment for all of said capital stock. April 9, 1895, said company being then indebted to plaintiff in error in the sum of $8,648.50, gave to him its judgment note for that amount. April 18, 1895, said company, being indebted to the Union Trust Company Bank in the sum of $12,500, gave to said bank its two judgment notes for the sum owing to it.

The morning of May 24, 1895, a special meeting of the directors of said company was held. At that meeting plaintiff in error tendered his resignation as president and director of said company, which was accepted, to take effect at the close of that meeting. At that meeting plaintiff in error reported that he had transferred to Charles J. Ambs, 150 shares of the capital stock of said company, to James McCartney, five shares, and to Paul Rich, three shares. Said Ambs was thereupon elected to succeed plaintiff in error as president of said company "after the close" of that meeting, and said Rich to succeed plaintiff in error as a director "after the close" of said meeting. One of the stockholders requested the president to call a meeting of the stockholders. Thereupon the directors adjourned their meeting and

immediately thereafter, and at 10 o'clock A. M., the same day, a meeting of the stockholders was convened, at which all of the stockholders were present.

At that meeting of the stockholders the directors were instructed to cause the proper officers of said company to execute and deliver to plaintiff in error a chattel mortgage upon all the property of said company to secure the amount due to him and the amount for which he was security for said company. Plaintiff in error was then security for the payment of said sum due to said bank, and probably for other sums, although as to the latter the testimony is not very explicit.

Immediately after the adjournment of said stockholders' meeting, and the same day at about 11 o'clock A. M., another meeting of the directors was convened at which plaintiff in error expressed his willingness to surrender his judgment note, and assume the debt due to the bank if chattel mortgage should be executed and delivered to him, as provided in resolution adopted at the stockholders' meeting. Thereupon the directors instructed the president and secretary to execute and deliver to plaintiff in error a chattel mortgage on all the property of the company to secure the sum of $21,217.11, due in six months thereafter, with interest at six per cent.

Such a chattel mortgage had been prepared by the attorney for, and at the instance of, plaintiff in error before the first of said meetings of directors. Upon the adjournment of the last of said directors' meetings, the president and secretary of said company repaired to the office of a justice of the peace and executed and acknowledged said chattel mortgage in the name of said company. Plaintiff in error went to the office of the justice of the peace and the mortgage was there delivered to him. About an hour later, the secretary, at the request of the plaintiff in error, met him at the office of his attorney, where a conversation was had as to threats of creditors to take some action against the company.

About five o'clock P. M., the same day, plaintiff in error took possession of all the property of said company under

said chattel mortgage. Notices of a chattel mortgage sale to take place June 7, 1895, were at once prepared and posted. Printed circulars advertising said sale were sent to other cities as well as being distributed in Chicago. At such sale, after offering the property in lots, it was offered as a whole. Said property was struck off to said Ambs, he having bid therefor the sum of $12,500, that being the highest bid made.

Mr. Ambs is a son-in-law of plaintiff in error. He came to Chicago from Springfield, Ill., the morning of the day when he was elected president of said company; he had never been interested in said company prior to that time; plaintiff in error assigned to him 150 shares, being one half the capital stock of said company, without receiving, so far as shown by record in this court, any pecuniary compensation therefor; said Ambs had not the means with which to pay the amount of the bid made by him for said plant; and plaintiff in error never did realize or receive the full amount of $12,000 bid at said sale.

Having reduced their claims to judgments, defendants in error filed their creditor's bill in this case against the plaintiff in error and others, charging therein that said chattel mortgage and the sale thereunder are fraudulent and void as against them and their said judgments. The court below in overruling the objections to the report of a master, held and decreed that said chattel mortgage and the sale thereunder were fraudulent and void and adjudged that plaintiff in error should pay the judgment claims of defendants in error in full.

James McCartney, attorney for plaintiff in error; McGuire & Salzenstein, of counsel.

John Mayo Palmer and Robertson Palmer, attorneys for defendants in error.

Mr. Presiding Justice Horton delivered the opinion of the court.

Counsel speaking for plaintiff in error commenced their argument by this statement:

" He assigns specifically a large number of errors, which we, for convenience' sake, will summarize and argue mainly under two heads : First, that assuming all the facts to be true as found by the master in chancery and approved by the court, the conclusion of law drawn from them by the master and court is clearly erroneous. Second, that the evidence does not support the findings of the master that the property conveyed to Rokker by the Rokker-O'Donnell Co. exceeded in value the amount due Rokker and defendants in error, and Rokker should pay them the amount of their judgments with interest."

The questions thus presented are frankly accepted by counsel for defendants in error as fairly presenting the issues in this court.

It is argued by counsel for plaintiff in error and conceded by counsel for defendants in error, that ordinarily, an insolvent corporation may prefer creditors who are not directors or officers of such corporation.

Counsel for plaintiff in error also contend that the plaintiff in error was not, at the time he received the chattel mortgage security, an officer or a director of said company; that the company had a right to give and he to receive such security, and that he had the right to enforce the lien of said mortgage in the manner indicated.

It is true that at the time said chattel mortgage was executed and delivered, plaintiff in error was not an officer or a director of said company. It is also true that he had been such president and a director up to within two or three hours prior to the time said mortgage was delivered to him, and that said mortgage had been prepared by his attorney at his instance and after consultation with other officers and directors of said company before he resigned as such president and director. A meeting of the directors was held at nine o'clock A. M., at which plaintiff in error resigned as president and director, and his successor as president and his successor as director were elected. At ten o'clock a meeting of the stockholders was held at which the directors were instructed to cause the proper officers to execute and deliver the mortgage to plaintiff in error. At eleven o'clock a meeting of the board of directors as then constituted was

held, at which the president and secretary were instructed to execute and deliver the chattel mortgage in question. Plaintiff in error was present at all of said meetings. At about twelve o'clock said mortgage was executed and delivered to plaintiff in error. At five o'clock the same day plaintiff in error took possession, under said chattel mortgage, of the property therein described.

The conclusion seems to us to be irresistible, that the whole scheme of securing a pre-existing debt due to the plaintiff in error, by making a chattel mortgage upon all the property and assets of said corporation, was fully prepared and arranged by the plaintiff in error while he was the president and a director of said company, and in consultation with other directors. The fact that he did not receive the chattel mortgage, duly executed and acknowledged, until two or three hours after he had resigned, does not change the rule of law applicable to the case. The purpose and spirit of the rule is to prevent officers who are creditors of an insolvent corporation from taking advantage of their position as such officers, to secure a preference over other creditors of such corporation. Under the facts and circumstances appearing in this case, it must be held that plaintiff in error sought to avail himself of a preference over other creditors which was obtained through, and by reason of his position as an officer of said corporation.

It is further contended by counsel for plaintiff in error that said chattel mortgage is valid and binding because it was authorized and directed to be given by the stockholders of the corporation at a meeting where all the stockholders were present in person.

When the facts are considered this argument is more specious than real. The stockholders present at that meeting and the number of shares held by each were as follows, viz.: Charles J. Ambs, one hundred and fifty shares; Charles Edwards, forty-five shares; plaintiff in error, ninety-five shares; James McCartney, five shares, and Paul Rich, five shares. The facts as to Mr. Ambs' stock and his relation to plaintiff in error and to said company appear in the pre-

ceding statement.  Plaintiff in error had agreed to protect Mr. Edwards as to his stock.  Plaintiff in error had but just transferred to Mr. McCartney, who was his attorney, five shares, and he had been made a director within the preceding hour.  The transfer to Mr. Rich of five shares by plaintiff in error had just been reported, and he also had been made a director within the preceding hour.  This is a suit in equity and said chattel mortgage can not be validated by or by reason of the proceedings of said so-called stockholders' meeting.  And there was no error in the decree of the court below holding that said chattel mortgage did not constitute a lien as against the claims of defendants in error.

The second question presented is, does the evidence support the finding that the property conveyed by said company to plaintiff in error was equal to, or exceeded, the amount of the debts owing by said company?

The amount of such debts as appears from the testimony of plaintiff in error are:

Amount found to be due to defendants in error..$  2,369.20
"      due  plaintiff  in error, secured by said
           chattel mortgage................... 21,217.11
"      debts since paid by plaintiff in error... 9,000.00
                                             _____
                                             $32,586.31

Mr. Edwards, secretary and treasurer of said company, testified that the indebtedness of said company aside from the chattel mortgage note was between $15,000 and $18,000. That would make the total indebtedness between $36,217.11 and $39,217.11.  There is no other evidence as to the amount of such indebtedness.

The averment in the bill of complaint is that plaintiff in error is liable " not only for the amount which was bid for the said assets but for their actual fair market value of $25,000."  There were no other assets received by plaintiff in error.  If the allegation of the bill as to the value of the property be relied upon, and defendants in error are bound thereby, the indebtedness exceeded the value of the property by from $7,500 to $14,000.

It appears that plaintiff in error paid for the plant a little more than a year prior to the mortgage sale, $17,500. He testified that at the time of such sale the property was in his judgment worth $18,000 to $19,000. The sale was extensively advertised in this and neighboring cities, and the highest bid was $12,500. In another part of his testimony plaintiff in error says that at the time he took the chattel mortgage he understood from a statement by the secretary and treasurer that the assets of the company amounted to about $35,000. Again, he says that if the plant and machinery were worth $30,000, the plant, machinery, accounts and contracts to be done, would be about $40,000. The contracts amounted to about $15,000, upon which $3,000 to $4,000 worth of work had been done. The accounts amounted from $10,000 to $12,000, of which $7,000 to $8,000 were bad. From all this testimony we are unable to see any theory upon which it can be fairly contended that the value of the property belonging to said company and taken by the plaintiff in error, was equal to the amount of the debts of said company. The plaintiff in error is liable only for the fair value of the property taken by him. As he did not take property equal in value to the amount of the indebtedness of the company, it was error to decree that he must pay the demands of the defendants in error in full.

The decree of the Circuit Court will be affirmed except as to the amounts to be paid by plaintiff in error to defendants in error. While we are of opinion that the evidence now before the court establishes the fact that the debts of said company exceeded in amount the value of the property taken by plaintiff in error, such evidence is not sufficient to determine therefrom definitely the amount of either. Further testimony should be taken for the purpose of showing such amounts. The case will therefore be remanded with directions to the Circuit Court that testimony be taken to determine, first, the amount of the indebtedness of said company at the time the plaintiff in error took possession of the property under said chattel mortgage May 24, 1895, and second, the value at that time of all the prop-

erty, belonging to said company, taken by plaintiff in error. If it shall be found from the testimony thus taken in connection with the testimony heretofore taken, that the value of such property is equal to the amount of such indebtedness, then the court will decree the payment by plaintiff in error to defendants in error of the full amount due to them, respectively, or so much thereof as they shall be entitled to receive under the allegations of said bill of complaint. If it shall be found that the value of such property is less than the amount of such indebtedness, the court will decree the payment by plaintiff in error to defendants in error, the same proportion or percentage of the amount due to them, respectively, which the value of such property bears to the whole amount of such indebtedness, or so much thereof as they shall be entitled to receive under the allegations of said bill. Affirmed in part and reversed in part, with directions.