## City National Bank v. Goshen Woolen Mills Company et al.

[No. 3,707. Filed December 8, 1903. On Transfer to Supreme Court, decided June 30, 1904.]

1. Corporations.— *Insolvency.— Directors.— Resignation to Receive Preference.*—A director who resigns in order to be preferred in a deed of assignment on insolvency, will nevertheless be counted as a director.   p. 566.
2. Same. — *Insolvency. — Assignment. — Preferences.*— A corporation may make an assignment in insolvency the same as a natural person and may prefer its *bona fide* creditors.   p. 568.
3. Same.—*Insolvency.—"Trust Fund" Theory.*—An insolvent corporation has the same right in respect to its property that an insolvent person has, and its assets do not constitute a "trust fund" for the payment of debts.   p. 570.
4. Same.—*Directors.—Trust.*—The directors of a corporation occupy a position of trust, for the stockholders, while solvent, and for the creditors, *pro rata* or preferentially, when insolvent.   p. 571.

City Nat. Bank *v.* Goshen Woolen Mills Co.—35 Ind. App. 562.

5. CORPORATIONS.—*Insolvency.—Directors.—Personal Advantage.*—Directors have no right to deal with the assets of an insolvent corporation to their undue personal advantage, and such transactions may be set aside. p. 573.

6. SAME.—*Insolvency.—Assets.—Fraudulent Use of by Directors.— Who May Complain.*—The creditors have the right to have the assets of an insolvent corporation applied to the payment of the debts thereof, and may impeach the fraudulent acts of the directors in respect to such assets. p. 574.

7. SAME.— *Insolvency.— Directors.— Creditors.—Preference.*—The directors, who are also creditors, of an insolvent private corporation have no right to prefer themselves in a deed of assignment of such corporation after insolvency, when their votes are necessary to make such preference. p. 575.

8. APPEAL AND ERROR. — *Erroneous Ruling Precedent. — Appellate Court.—Transfer.*—Where a ruling precedent is deemed erroneous, the cause, with the reasons that such precedent is considered erroneous, will be transferred by the Appellate Court to the Supreme Court. p. 589.

From St. Joseph Circuit Court; *Lucius Hubbard,* Judge.

Action by the City National Bank of Goshen against the Goshen Woolen Mills Company and others. From a judgment for certain defendants, plaintiff appeals. Transferred to Supreme Court under subdivision one, §1337j Burns 1901, Acts 1901, p. 565, §10. (On transfer to Supreme Court, see 163 Ind. 214.) *Cause transferred to Supreme Court.*

*A. L. Brick, C. W. Miller* and *J. S. Drake,* for appellant. *J. M. Van Fleet* and *V. W. Van Fleet,* for appellees.

ROBINSON, J.—The court stated the facts as follows: On the 7th day of January, 1896, the Goshen Woolen Mills Company, a corporation, executed to appellant its promissory note, payable on or before January 12, 1897, which note was indorsed by Edmund R. Kerstetter and James L. Kerstetter. There is due on the note in principal, interest and attorneys' fees $5,325.24. At the time of the maturity of the note the Goshen Woolen Mills Company was insolvent, and was on January 5, 1897, and for months prior thereto and ever since has been, insolvent. At the time

of the maturity of the note the appellee company had $23,-000 indebtedness, past due and unpaid, and which it was unable to pay, and $13,000 assets.    On the 9th day of January, 1897, appellees Edmund R. Kerstetter, James L. Kerstetter, Alice M. Kerstetter, Susan E. Kerstetter and Edward Schilling were the directors of the Goshen Woolen Mills Company, and on that day Susan E. Kerstetter resigned as a director, in order that she might be preferred as a creditor of the company, and at the same time she assigned all her stock in the company to Alice M. Kerstetter, in consideration that such assignee would pay to her just what Alice might realize out of the stock.    Prior to the resignation of Susan E. Kerstetter, and while she was still a director, it was agreed by the board of directors that she should have a preference, and on the same day the deed of trust was executed with the active procurement of James L. Kerstetter, Edmund R. Kerstetter and Edward Schilling, Alice M. Kerstetter, the fourth director, being then sick and not acting.    The deed of trust conveys to a trustee named all the property of the woolen mills company, and directs the sale of the property by the trustee, and the application of the proceeds in the following manner:    (1) Payment of taxes, assessments and expenses of the trust; (2) for work and labor; (3) the unliquidated debt of Van Fleet & Van Fleet, attorneys; (4) a note of $3,500, payable to Susan E. Kerstetter; (5) notes of $1,400 and $1,434.38 to the Elkhart National Bank; (6) a note to Alexander Gordon for $1,434.38, to the State Bank of White Pigeon, Michigan, a note for $1,147.50, a note to the First National Bank of Hillsdale, Michigan, for $1,606.50, a note to the First National Bank of Quincy, Michigan, $2,868.75, a note to the Salem Bank of Goshen, Indiana, for $573.75, and a note to A. M. Lewis & Co. for $1,500; (7) any funds remaining to be paid to the grantor; (8) right to appoint a new trustee reserved to the grantor.    The court further found that it was the intention of the woolen

mills company and of the board of directors in the execution and delivery of the deed to secure to the directors James Kerstetter and Edward Schilling whatever amount might be due them for work and labor, also to secure the firm of attorneys named for the preparation of the trust deed, the claims of Susan E. Kerstetter and the Elkhart National Bank and the other parties and banks above named; that James L. Kerstetter was bound as an indorser on the notes held by the Elkhart National Bank, and James L. Kerstetter and Edmund R. Kerstetter were bound as indorsers on the other obligations held by the persons and banks named in the trust deed; that at that time Edmund R. Kerstetter was the president and James L. Kerstetter was the secretary, treasurer and general manager of the woolen mills company, and at that time Edmund R. Kerstetter was the owner of $33,000 of the capital stock of the Elkhart National Bank, and was the cashier and manager of the bank, whose entire capital stock was $50,000; that James L. Kerstetter was the husband of Susan E. Kerstetter; that Edmund R. Kerstetter was the husband of Alice M. Kerstetter; that Edward Schilling was the salesman for the company, and the trustee named was a clerk in the Elkhart National Bank; it is further found that it was intended that appellant and other unsecured creditors, not mentioned in the deed of trust, should take no part of the assets of the corporation, and should be entirely unable to collect their debts or any part thereof; that it was the expectation of the directors that the trustee would leave the actual possession, control and management of the company in their hands, and would act as trustee nominally, and that the trustee would compensate the directors for their services in the care and management of the property as a part of the expenses of the trust; that at the time of the execution of the deed the woolen mills company had debts, outside of the ones named therein, to the amount of $7,000, including appellant's claim; that all the property of the company

was continued in the possession and control of James L. Kerstetter, who continued to handle the business of the company as he had handled it before the execution of the deed;. that the mill was idle when the deed was made, and had been idle for several months, and had been operated only a small portion of the time since May, 1893; that Schilling was employed by James L. Kerstetter to assist him in managing the property, and that Kerstetter and Schilling were paid for their services; that Edmund R. Kerstetter, James L. Kerstetter, Edward Schilling and the trustee were at the time of the execution of the trust deed, and ever since have been, insolvent, and that the directors of the woolen mills company, at the time of the execution of the trust deed, knew that the woolen mills company was insolvent, and had known of such insolvency for at least one year prior thereto; that James L. Kerstetter and Edward Schilling, under the employment of the trustee, were at the time of the commencement of this action converting the property of the company into cash to pay their claims; that further to prevent appellant and other unsecured creditors from collecting their claims the woolen mills company confessed a judgment for $3,586.10 in favor of Susan E. Kerstetter, and a judgment for $2,924.76 in favor of the Elkhart National Bank; that the debts due to Susan E. Kerstetter and the Elkhart National Bank and the other creditors named in the trust deed are *bona fide* debts of the Goshen Woolen Mills Company.

As conclusions of law, the court stated: (1) That appellant was entitled to a judgment for $5,325.24 against the woolen mills company and Edmund R. Kerstetter and James L. Kerstetter; (2) that as to the other appellees, appellant take nothing.

1. It is insisted that the facts found show active and constructive fraud. The question presented upon the second conclusion of law is the right of the directors of an insolvent corporation to prefer themselves as creditors in a case

where the votes of the directors preferred are necessary to make the preference. Of the five directors, one—Susan E. Kerstetter—resigned on the day the trust deed was made, after it had been agreed on the same day that she should resign and have a preference. But by this act she could not escape being counted an officer. *Mallory* v. *Kirkpatrick* (1895), 54 N. J. Eq. 50, 33 Atl. 205. Of the four remaining directors, one took no part in the action. Of the three directors who authorized the execution of the deed of trust, two were directly preferred, and one of these and the third director were indorsers on notes of the preferred debts. *Savage* v. *Miller* (1898), 56 N. J. Eq. 432, 36 Atl. 578, 39 Atl. 665. The vote of each of the three directors who did act was necessary to authorize the execution of the deed.

The question presented is not the right of a solvent corporation, continuing business, to execute a valid security to a director or officer; nor the right of a director or officer, holding a security executed while the corporation was solvent, to enforce such security after insolvency; nor the validity of a security given a director or officer in case of threatened insolvency, but given in consummation of a promise made to obtain means to continue business in a just and reasonable belief that the business may be thus continued; nor the right of an insolvent corporation to prefer one or more of its officers by a vote of its directors sufficient without counting the votes of those preferred. But the question here presented is whether a majority or all of the directors of an insolvent corporation may prefer each one of themselves to the exclusion of its other creditors. Not only were two of the directors acting directly preferred, but one of these and the third director were indorsers on most of the obligations preferred. A preference where the directors are indorsers for the insolvent corporation and a preference where the insolvent corporation is indebted to its directors differ only in that in the one case the directors are indirectly preferring themselves, and in the other they are directly

doing so. Not only was one of the directors preferred an indorser on many of the preferred obligations, but a preference was given a bank, more than three-fifths of the stock of which was owned by this director.

2. The finding shows that the claims mentioned in the trust deed were *bona fide* debts of the corporation. It is held that an insolvent corporation may prefer its *bona fide* creditors in like manner as a natural person, and the fact that such preference may inure to the benefit of directors or officers of the corporation does not make it invalid. *Levering* v. *Bimel* (1897), 146 Ind. 545; *Henderson* v. *Indiana Trust Co.* (1896), 143 Ind. 561; *Clapp* v. *Allen* (1898), 20 Ind. App. 263; *Smith* v. *Wells Mfg. Co.* (1897), 148 Ind. 333; *Nathan* v. *Lee* (1899), 152 Ind. 232, 43 L. R. A. 820. But these cases are not authority for the statement that the directors of an insolvent corporation may prefer themselves, or that they may prefer a debt upon which a majority or all of the directors are indorsers.

In *Henderson* v. *Indiana Trust Co., supra,* it does not appear from the opinion that the five directors who indorsed the paper were all or a majority of the directors, and in the opinion it is said: "Whether an insolvent corporation may prefer a creditor who is a director or stockholder, we need not and do not decide." The scope of the decision is thus stated: "It should be remembered that the debt to appellant was a *bona fide* one; that he was not a stockholder or director, but a stranger to the corporation; that when the accounts were delivered to and accepted by appellant, the corporation was a going concern; that he had no notice or knowledge that the corporation was insolvent, or that the accounts were transferred and assigned to him for the purpose of protecting the indorsees, or with the fraudulent intent to cheat, hinder, and delay the other creditors of the corporation, if there was any such intent."

In *Levering* v. *Bimel, supra,* it is said: "Neither of the appellants in this appeal was a stockholder or an officer

of the corporation, but a stranger thereto, hence the question of a preference by an insolvent corporation to its own officers for debts held by them against such concern is not directly involved, and consequently the reasoning and holding herein must be limited to the fact in this respect, that the directors in question were but sureties upon the claims preferred. It is also insisted by the appellees that the fact that the preferences in the case at bar were authorized by the votes of the two directors who were the sureties upon the notes of the preferred creditors rendered the mortgage illegal. But the execution of the mortgages, as it appears, was authorized by the unanimous vote of the five directors, being the entire directory. Consequently, a majority of the directors, constituting a quorum, by their votes authorized the preference, independent of the votes of the two who were the sureties, therefore, the principle asserted in the case of *Buell* v. *Buckingham & Co.* [1864], 16 Iowa 284, would apply. It was held in that case that a preference made by an insolvent corporation to its president, by a vote of its directors, sufficient without counting the vote of the former, was valid."

Neither in *Smith* v. *Wells Mfg. Co., supra,* nor *Nathan* v. *Lee, supra,* was the question of the right of an insolvent corporation to prefer a creditor who was a director or officer of the company, or its right to prefer a debt upon which directors were sureties, considered.

In the above cases the question here presented was either not considered or expressly not decided. But since the above cases were decided it has been held in *Nappanee Canning Co.* v. *Reid, Murdoch & Co.* (1903), 159 Ind. 614, 59 L. R. A. 199, that directors of an insolvent corporation may prefer themselves, although all of them are director creditors. When it is said that an insolvent corporation may prefer its creditors as an individual may, and that a majority of a board of directors not interested may prefer one or a minority of the directors indirectly as surety or sure-

ties of the corporate debt, it seems that the doctrine is carried to its utmost limit. Any holding beyond this we believe to be opposed to the better reasoning and contrary to the great weight of modern authority.

3.   It is conceded that this State has not adopted the so-called "trust-fund" theory respecting the assets of insolvent corporations. *First Nat. Bank* v. *Dovetail, etc., Co.* (1896), 143 Ind. 550, 52 Am. St. 435; *Nathan* v. *Lee, supra; Henderson* v. *Indiana Trust Co., supra; Levering* v. *Bimel, supra.* See, also, *Sanford, etc., Tool Co.* v. *Howe, Brown & Co.* (1895), 157 U. S. 312, 15 Sup. Ct. 621, 39 L. Ed. 713; *Hollins* v. *Brierfield Coal, etc., Co.* (1893), 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113; *Smith, etc., Purifier Co.* v. *McGroarty* (1890), 136 U. S. 237, 10 Sup. Ct. 1017, 34 L. Ed. 346; *Fogg* v. *Blair* (1890), 133 U. S. 534, 11 Sup. Ct. 476, 33 L. Ed. 721; *Richardson* v. *Green* (1890), 133 U. S. 30, 10 Sup. Ct. 280, 33 L. Ed. 516; *Peters* v. *Bain* (1890), 133 U. S. 670, 10 Sup. Ct. 354, 33 L. Ed. 696; *Brown* v. *Grand Rapids, etc., Furniture Co.* (1893), 58 Fed. 286, 7 C. C. A. 225, 22 L. R. A. 817; *Conover* v. *Hull* (1895), 10 Wash. 673, 39 Pac. 166, 45 Am. St. 810, note p. 826.

But it can not be said that the denial of the right of the directors of an insolvent corporation to prefer themselves would be to adopt the trust-fund doctrine. Nor can it be said that the theory that the directors hold the corporate property as trustees obtains only in courts that adhere to that doctrine. And when it is said that the trust-fund doctrine has been repudiated by most of the states of the Union it must not be understood that upon repudiating the doctrine the courts of those states have permitted directors to prefer themselves along with other creditors. In a very large majority of the states where that doctrine has been repudiated it is only to the extent of recognizing the right of insolvent corporations to prefer their common, unofficial creditors in the same manner and to the same extent that an insolvent

individual may; but these states quite as generally hold that director creditors may not be preferred, for the reason that their position as managing agents gives them an unfair and unequal advantage over other creditors, and that a court of chancery can not permit them to profit by their superior knowledge, thus gained, in a race of diligence among creditors. So that while a few states still adhere to the trust-fund theory, and deny the right to make any preference at all, a very large majority of the states have repudiated the doctrine only to the extent stated, and a very small minority of the states have repudiated the doctrine *in toto,* and permit the directors to prefer themselves to the exclusion of all other creditors.

4. But it is immaterial by what name we designate the position occupied by the directors of a corporation, the fact remains that it is one of trust. They are bound to devote its property, while in their hands, to the objects for which the corporation was created. If they misappropriate its property, the only persons to whom they are answerable are the stockholders or the creditors. They hold and administer the corporate assets, in the first instance, for the stockholders, and it is to these assets alone, in the absence of statute, that the creditor can have recourse when the corporation ceases to prosecute its business or becomes insolvent, and it is to this property he must look as the only security for the fulfilment of its obligation. "The directors are the agents and trustees of the corporation and its stockholders," said the court in *Nappanee Canning Co.* v. *Reid, Murdoch & Co.,* *supra.* It is quite true that a corporation is an entity and existence separate from its officers and stockholders. But an act of insolvency like that in the case at bar leaves this separate entity without authority or value for any purpose. That the directors of a private corporation are simply and solely the representatives of the stockholders and of the corporation must be held to apply to a solvent, going concern, but such a statement applied to an insolvent corporation is,

in effect, to say that the directors are the representatives of the stockholders and of themselves, because, if it is denied that the directors of an insolvent corporation owe any duty to their creditors, and the rights and duties of the stockholders and directors are taken out of the corporation, there is nothing left for anyone to represent. It is not possible for the insolvent corporation, as a legal entity, to enforce any rights or to perform any duties aside from the rights and duties of its stockholders and directors. The acquiescence of the corporation and the stockholders in an action taken by the directors after insolvency can mean nothing more than the acquiescence of the stockholders in such action.

It is quite true that while the corporation is a going concern the directors are the trustees primarily of the stockholders, who are the real parties in interest. But when the corporation becomes insolvent, the relation of these trustees towards the assets has not changed. They no longer hold the assets in trust for the stockholders, as the stockholders have parted with all beneficial interest in the assets, because the same by force of law is transferred to the creditors. But because of the insolvency nothing has taken place that has changed the relation of the directors to the remaining assets. These remaining assets must go to the creditors. The directors must preserve the assets for this express purpose, and are powerless to make any other disposition of them. These assets must go to creditors, and to no one else, although, under the doctrine of preference, not necessarily to all creditors, or classes of creditors, alike. As the relation of the directors to the assets has not been changed by the insolvency, they necessarily hold the assets, not for themselves, but in trust for the creditors who now have the exclusive interest; so that it must not be understood that there is no trust relation between the directors and the creditors. They hold these assets in trust for the payment of the debts, either pro rata or preferentially, and they can

apply the assets to no other purpose. And when it is said that the trust-fund theory has been repudiated, nothing more can be meant than that the assets of an insolvent corporation are not held by the directors in trust for creditors pro rata.

5.   Let it be conceded that a corporation may prefer its creditors as an individual may, it certainly should not be declared that a corporation may do more in this regard than an individual may. But this is what is done when directors are permitted to prefer themselves. When the three or five directors are the sole stockholders, and apply its assets, when insolvent, to the payment of themselves as creditors, they are, in effect, exercising a power which is denied to an insolvent individual. So long as the directors of an insolvent corporation retain dominion over the assets, they should have the power to dispose of the assets and prefer creditors to the same extent that a partnership or an individual can. But with their authority as the corporation's only representatives in its dealings with the public, with their exclusive knowledge of its affairs by reason of their exclusive right of management, with their authority to determine when the corporation is insolvent and when it becomes necessary to abandon the object for which it was created, with the duty imposed upon them to devote to particular uses the property placed in their control, with the public as well as creditors wholly relying upon their fidelity and integrity, it would seem to violate the very spirit of equity to permit these managing agents and trustees, when the corporation becomes insolvent, to act as grantors for the corporation in distributing to themselves, as grantees, upon their own unsecured antecedent claims, the remaining assets of the corporation, to the exclusion of other unsecured creditors.

A court would not hesitate to repudiate any action of a director of a solvent, going corporation whereby he sought to use his official position to advance his personal interests beyond those of others of equal merit. This is true because of the fiduciary relation of a director towards all persons

lawfully entitled to the assets of the corporation. The creditors of an insolvent corporation are not the less lawfully entitled to the remaining assets of the corporation than are the stockholders lawfully entitled to the assets of a solvent corporation. The duty of the directors to preserve the remaining assets and apply them to the payment of debts, when the corporation becomes insolvent, is no less imperative than it is to account to the stockholders when the corporation is solvent. And when the director of an insolvent corporation undertakes to use his official position to advance his personal interests beyond those of others of equal merit the condemnation by a court of equity of such an act should be as prompt and effective as it would be in cases where the corporation is solvent. Until it can be said that some person or class of persons, other than creditors, has or may have some claim upon the remaining assets of an insolvent corporation, the statement that there is no trust relation between the directors of the insolvent corporation and the creditors must stand unsupported by sufficient reason.

6. It is argued that appellant—a creditor—can not complain of the acts of the directors in giving preference to themselves, but that the stockholders alone can do so; and it is held that "if the corporation and the stockholders acquiesce in the action of the director creditors, outside creditors, who are strangers to the corporation, and have no lien or claim upon its property, can not impeach the transaction." This necessarily is based upon the proposition that if the act of the directors was a fraud, it was a fraud upon the stockholders alone. But how could the act be a fraud upon the stockholders, who, under no circumstances, can receive any of the remaining assets of the corporation after it becomes hopelessly insolvent? Upon insolvency all the beneficial interest the stockholders had in the assets is transferred to the creditors, who must look to the property of the corporation as the only fulfilment of its obligations. The only recourse the creditors have when the corporation

becomes insolvent is the property in the hands of its managing officers. As they are the only persons injured under such circumstances, as all the remaining assets must go to creditors, and to no one else, we think it necessarily follows that they are the proper parties to complain of fraudulent acts of the directors in disposing of the remaining assets. Could creditors not be heard to complain if the directors were giving away the remaining assets or disposing of them at a sacrifice in the interest of others, even with the consent of the stockholders? It must be admitted that it is as much the duty of the directors after the corporation becomes insolvent to preserve its assets for the benefit of creditors as it was their duty before insolvency to preserve the assets for the stockholders. See 2 Morawetz, Corporations (2d ed.), 579; 5 Thompson, Corporations, §6530; *Crown v. Brainerd* (1885), 57 Vt. 625; *Atlanta Real Estate Co. v. Atlanta Nat. Bank* (1885), 75 Ga. 40; *Sweeny v. Sugar Refining Co.* (1887), 30 W. Va. 443, 4 S. E. 431, 8 Am. St. 88. Moreover, where the directors and stockholders are the same persons, as when the corporation has but three or five directors, and they are its sole stockholders, it could hardly be expected that the stockholders would sue themselves as directors to set aside as fraudulent a transaction in which they themselves had been engaged. A court of equity will certainly protect the right of creditors of an insolvent corporation to have the remaining assets applied in payment of their claims.

7. Some of the states, among them Ohio, Tennessee, Texas, Washington and South Dakota, adhere to the trust-fund doctrine, and upon the insolvency of the corporation no preferences can be made, which necessarily means that director creditors can not be preferred. The great weight of authority is against permitting the directors or officers of an insolvent corporation to be preferred as creditors, or to prefer themselves, and in support of the view we have taken of the question we cite the following: *Bonney v. Tilley*

(1895), 109 Cal. 346, 42 Pac. 439; *Sacramento Bank* v. *Pacific Bank* (1899), 124 Cal. 147, 56 Pac. 787, 45 L. R. A. 863, 71 Am. St. 36; *Merced Bank* v. *Ivett* (1899), 127 Cal. 134, 59 Pac. 393; *Fishel* v. *Goddard* (1902), 30 Colo. 147, 69 Pac. 607; *Lowry Banking Co.* v. *Empire Lumber Co.* (1893), 91 Ga. 624, 17 S. E. 968; *Milledge-ville Banking Co.* v. *McIntyre Alliance Store* (1896), 98 Ga. 503, 25 S. E. 567; *Atlas Tack Co.* v. *Macon Hardware Co.* (1897), 101 Ga. 391, 29 S. E. 27; *Monroe Mercantile Co.* v. *Arnold & McCord* (1899), 108 Ga. 449, 34 S. E. 176; *Atlas Tack Co.* v. *Exchange Bank* (1900), 111 Ga. 703, 36 S. E. 939; *Beach* v. *Miller* (1889), 130 Ill. 162, 22 N. E. 464, 17 Am. St. 291; *Roseboom* v. *Whittaker* (1890), 132 Ill. 81, 23 N. E. 339; *Atwater* v. *American Exchange Nat. Bank* (1894), 152 Ill. 605, 38 N. E. 1017; *Gottlieb* v. *Miller* (1894), 154 Ill. 44, 39 N. E. 992; *Rock-ford, etc., Grocery Co.* v. *Standard Grocery, etc., Co.* (1898), 175 Ill. 89, 51 N. E. 642, 67 Am. St. 205; *Mayr* v. *Hodge & Homer Co.* (1898), 78 Ill. App. 556; *Rokker* v. *J. W. Butler Paper Co.* (1900), 88 Ill. App. 278; *Ryan* v. *Leavenworth, etc., R. Co.* (1879), 21 Kan. 365; *Chicago, etc., Bridge Co.* v. *Fowler* (1895), 55 Kan. 17, 39 Pac. 727; *Hays* v. *Citizens Bank* (1893), 51 Kan. 535, 33 Pac. 318; *Grand De Tour Plow Co.* v. *Rude Bros. Mfg. Co.* (1899), 60 Kan. 145, 55 Pac. 848; *Cahill* v. *People's Slaughter-House, etc., Co.* (1895), 47 La. Ann. 1483, 17 South. 784; *James Clark Co.* v. *Colton* (1900), 91 Md. 195, 46 Atl. 386, 49 L. R. A. 698; *Symonds* v. *Lewis* (1901), 94 Me. 501, 48 Atl. 121; *Clay* v. *Towle* (1886), 78 Me. 86, 2 Atl. 852; *European, etc., R. Co.* v. *Poor* (1871), 59 Me. 277; *Taylor* v. *Mitchell* (1900), 80 Minn. 492, 83 N. W. 418; *Janney* v. *Minneapolis, etc., Exposition* (1900), 79 Minn. 488, 82 N. W. 984, 50 L. R. A. 273; *Taylor* v. *Fanning* (1902), 87 Minn. 52, 91 N. W. 269; *Love Mfg. Co.* v. *Queen City Mfg. Co.* (1896), 74 Miss. 290, 20 South. 146; *Millsaps* v. *Chapman* (1899), 76 Miss.

942, 26 South. 369, 71 Am. St. 547; *King* v. *Wooldridge* (1900), 78 Miss. 179, 28 South. 824; *Robins* v. *Embry* (1843), 1 Sm. & M. Ch. 207, 262; *Lamb* v. *Russell* (1902), 81 Miss. 382, 32 South. 916; *Tillson* v. *Downing* (1895), 45 Neb. 549, 63 N. W.. 836; *Ingwersen Bros.* v. *Edgecombe* (1894), 42 Neb. 740, 60 N. W. 1032; *Stough* v. *Ponca Mill Co.* (1898), 54 Neb. 500, 74 N. W. 868; *Seeds Dry-Plate Co.* v. *Heyn Photo-Supply Co.* (1898), 57 Neb. 214, 77 N. W. 660; *Reynolds* v. *Smith* (1900), 60 Neb. 197, 82 N. W. 627; *National Wall Paper Co.* v. *Columbia Nat. Bank* (1901), 63 Neb. 234, 88 N. W. 481, 56 L. R. A. 121; *Merchants Nat. Bank* v. *McDonald* (1901), 63 Neb. 363, 88 N. W. 492; *Williams* v. *Turner* (1902), 63 Neb. 575, 88 N. W. 668; *Smith* v. *Putnam* (1882), 61 N. H. 632; *Richards* v. *New Hampshire Ins. Co.* (1861), 43 N. H. 263; *Taylor* v. *Gray* (1899), 59 N. J. Eq. 621, 44 Atl. 668; *Savage* v. *Miller* (1898), 56 N. J. Eq. 432, 36 Atl. 578, 39 Atl. 665; *Mallory* v. *Kirkpatrick* (1895), 54 N. J. Eq. 50, 33 Atl. 205; *Montgomery* v. *Phillips* (1895), 53 N. J. Eq. 203, 31 Atl. 622; *Tennant* v. *Appleby* (1898) (N. J. Eq.), 41 Atl. 110, 9 Am. and Eng. Corp. Cas. (N. S.) 205; *Third Nat. Bank* v. *Elliott* (1886), 42 Hun 121, affirmed in 114 N. Y. 622, 21 N. E. 416; *Hill* v. *Pioneer Lumber Co.* (1893), 113 N. C. 173, 18 S. E. 107, 21 L. R. A. 560, 37 Am. St. 621; *Graham* v. *Carr* (1902), 130 N. C. 271, 41 S. E. 379; *Rouse* v. *Merchants Nat. Bank* (1889), 46 Ohio St. 493, 22 N. E. 293, 15 Am. St. 644, 5 L. R. A. 378; *Finch Mfg. Co.* v. *Stirling Co.* (1898), 187 Pa. St. 596, 41 Atl. 294; *Mueller* v. *Monongahela Fire-Clay Co.* (1898), 183 Pa. St. 450, 38 Atl. 1009; *Sicardi* v. *Keystone Oil Co.* (1892), 149 Pa. St. 148, 24 Atl. 163; *Pangburn* v. *American Vault, etc., Co.* (1903), 205 Pa. St. 83, 54 Atl. 504; *Olney* v. *Conanicut Land Co.* (1889), 16 R. I. 597, 18 Atl. 181, 5 L. R. A. 361, 27 Am. St. 767; *Adams & Westlake Co.* v. *Deyette* (1895), 8 S. Dak.

119, 65 N. W. 471, 31 L. R. A. 497, 59 Am. St. 751; *Portland, etc., Mining Co.* v. *Rossiter* (1903), 16 S. Dak. 633, 94 N. W. 702; *Memphis Barrel, etc., Co.* v. *Ward* (1897), 99 Tenn. 172, 42 S. W. 13, 63 Am. St. 825; *New Memphis Gaslight Co. Cases* (1900), 105 Tenn. 268, 292, 60 S. W. 206; *Marr* v. *Bank of West Tenn.* (1867), 4 Coldw. 471; *Swepson* v. *Exchange & Deposit Bank* (1882), 9 Lea 713; *Lyons-Thomas Hardware Co.* v. *Perry Stove Mfg. Co.* (1893), 86 Tex. 143, 24 S. W. 16, 22 L. R. A. 802; *Lyons-Thomas Hardware Co.* v. *Perry Stove Mfg. Co.* (1895), 88 Tex. 468, 27 S. W. 100; *Noble Mercantile Co.* v. *Mt. Pleasant, etc., Inst.* (1896), 12 Utah 213, 42 Pac. 869; *Burnham, etc., Co.* v. *McCornick* (1898), 18 Utah 42, 55 Pac. 77; *State, ex rel.,* v. *Superior Court* (1899), 20 Wash. 545, 56 Pac. 35, 45 L. R. A. 177; *Cook* v. *Moody* (1897), 18 Wash. 114, 50 Pac. 1020, 63 Am. St. 872; *Conover* v. *Hull* (1895), 10 Wash. 673, 39 Pac. 166, 45 Am. St. 810; *Hulings* v. *Hulings Lumber Co.* (1893), 38 W. Va. 351, 18 S. E. 620; *Lamb* v. *Laughlin* (1884), 25 W. Va. 300; *Lamb* v. *Pannell* (1886), 28 W. Va. 663; *Haywood* v. *Lincoln Lumber Co.* (1885), 64 Wis. 639, 26 N. W. 184; *First Nat. Bank* v. *Knowles* (1886), 67 Wis. 373, 28 N. W. 225; *Rowe* v. *Leuthold* (1898), 101 Wis. 242, 77 N. W. 153; *Slack* v. *Northwestern Nat. Bank* (1899), 103 Wis. 57, 79 N. W. 51, 74 Am. St. 841; *Durlacher* v. *Frazer* (1898), 8 Wyo. 58, 55 Pac. 306, 80 Am. St. 918; *Bradley* v. *Farwell* (1874), Holmes 433, 440, Fed. Cas. No. 1,779; *Bradley* v. *Converse* (1876), 4 Cliff. 375, 379, Fed. Cas. No. 1,776; *Corbett* v. *Woodward* (1879), 5 Saw. 403, 417, Fed. Cas. No. 3,223; *Coons & Braine* v. *Tome* (1881), 9 Fed. 532, 534; *Lippincott* v. *Shaw Carriage Co.* (1885), 25 Fed. 577, 586; *Adams* v. *Kehlor Milling Co.* (1888), 35 Fed. 433, 435; *Adams* v. *Kehlor Milling Co.* (1888), 36 Fed. 212, 213; *Consolidated Tank-Line Co.* v. *Kansas City Varnish Co.* (1890), 43 Fed. 204; *Howe, Brown & Co.* v. *Sanford, etc., Tool Co.* (1890),

44 Fed. 231, 33 Am. and Eng. Corp. Cas. 288; *Consolidated Tank-Line Co.* v. *Kansas City Varnish Co.* (1891), 45 Fed. 7, 13; *Sutton Mfg. Co.* v. *Hutchinson* (1894), 63 Fed. 496, 502, 11 C. C. A. 320, 11 Am. R. and Corp. Rep. 156; *Bosworth* v. *Jacksonville Nat. Bank* (1894), 64 Fed. 615, 619, 12 C. C. A. 331; *Northwestern Mut. Life Ins. Co.* v. *Cotton Exchange, etc., Co.* (1895), 70 Fed. 155, 160; *Kittel* v. *Augusta, etc., R. Co.* (1897), 78 Fed. 855, 856; *Richards* v. *Haliday* (1899), 92 Fed. 798; *Hart* v. *Globe Ins. Co.* (1882), 113 Fed. 307, 342; *Harding* v. *Hart* (1902), 113 Fed. 304, 51 C. C. A. 264; *Koehler* v. *Black River, etc., Co.* (1862), 2 Black 715, 17 L. Ed. 339; *Drury* v. *Cross* (1868), 7 Wall. 299, 19 L. Ed. 40; *Curran* v. *State* (1853), 15 How. *304, 14 L. Ed. 705; *Graham* v. *Railroad Co.* (1880), 102 U. S. 148, 26 L. Ed. 106; *Hollins* v. *Brierfield Coal, etc., Co.* (1893), 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113; *Gaslight Improvement Co.* v. *Terrell* (1870), L. R. 10 Eq. 168; *Aberdeen R. Co.* v. *Blakie* (1854), 1 Macq. 461; 1 Beach, Priv. Corp., §241b; 2 Cook, Corporations (5th ed.), §692; Clark, Corporations, §244; 3 Clark & Marshall, Priv. Corp., p. 2414; Elliott, Corporations (3d ed.), §189; Field, Corporations, §§172-174; 2 Morawetz, Priv. Corp. (2d ed.), §787; 2 Spelling, Priv. Corp., §713; Taylor, Priv. Corp. (4th ed.), §759; 5 Thompson, Corporations, §6503; 7 Thompson, Corporations, §8496; Wait, Insolvent Corp., §162; 2 Beach, Contracts, §1071; Reese, Ultra Vires, §155; 23 Am. Law Rev. 1009; 27 Am. Law Rev. 846; note to *Tennant* v. *Appleby,* 9 Am. and Eng. Corp. Cas. (N. S.) 209-212; note to *Atlas Tack Co.* v. *Exchange Bank,* 13 Am. and Eng. Corp. Cas. (N. S.) 252; note to *Graham* v. *Carr,* 16 Am. and Eng. Corp. Cas. (N. S.) 483; note to *Siddell* v. *Missouri Pac. R. Co.,* 24 C. C. A. 221-231; note to *Lyons-Thomas Hardware Co.* v. *Perry Stove Mfg. Co.,* 22 L. R. A. 802, 807; note to *Buck* v. *Ross,* 57 Am. St. 63, 82; note to *Conover* v. *Hull,* 45 Am. St. 826, 835; note to *Brown* v.

*Grand Rapids, etc., Furniture Co.,* 22 L. R. A. 817; note to *Sutton Mfg. Co.* v. *Hutchinson,* 11 Am. R. and Corp. Rep. 156-171; note to *Hill* v. *Pioneer Lumber Co.,* 9 Am. R. and Corp. Rep. 55-61.

As bearing upon the proposition that directors may not prefer themselves, see, also, *Richardson* v. *Green* (1890), 133 U. S. 30, 10 Sup. Ct. 280, 33 L. Ed. 516; *Wisconsin, etc., Ins. Co.* v. *Lehigh, etc., Coal Co.* (1894), 64 Fed. 497; *Siddell* v. *Missouri Pac. R. Co.* (1897), 78 Fed. 724, 24 C. C. A. 216; *Standard, etc., Oil Co.* v. *Excelsior Refining Co.* (1902), 108 La. 74, 32 South. 221; *Krause* v. *Malaga Glass Co.* (1889) (N. J. Eq.), 18 Atl. 367; *Merchants Nat. Bank* v. *Newton Cotton Mills* (1894), 115 N. C. 507, 20 S. E. 765; *Mary Lee, etc., R. Co.* v. *Knox & Co.* (1895), 110 Ala. 632, 19 South. 67; *Corey* v. *Wadsworth* (1891), 99 Ala. 68, 11 South. 350, 42 Am. St. 29, 23 L. R. A. 618; *Curran* v. *State* (1853), 15 How. *304, 14 L. Ed. 705; *King* v. *Union Iron Co.* (1890), 58 Hun 601, 11 N. Y. Supp. 603; *Hurd* v. *New York, etc., Laundry Co.* (1901), 167 N. Y. 89, 60 N. E. 327; *Standard Nat. Bank* v. *National Silk Label Co.* (1900), 63 N. Y. Supp. 312.

Without unduly extending this opinion, we can quote but briefly from a few of the above decisions. *Bonney* v. *Tilley* (1895), 109 Cal. 346: "It seems to be well settled that directors of an insolvent corporation, who are creditors of the company, can not secure to themselves any preference or advantage over other creditors in the payment of their claims." *Monroe Mercantile Co.* v. *Arnold & McCord* (1899), 108 Ga. 449: "In the management, therefore, of the property, after the failure of the corporation, the governing body of officers thereof are charged with the duty of conducting its affairs strictly in the interest of its existing creditors; and it would be a breach of such trust for them to undertake to give any one of its members any advantage over any other creditor in securing the payment of his debt in

preference to all others." *Atwater* v. *American Exchange Nat. Bank* (1894), 152 Ill. 605 : "If the directors are themselves creditors they can not receive any advantage or preference in the payment of their claims at the expense of other creditors." *Rockford, etc., Grocery Co.* v. *Standard Grocery, etc., Co.* (1898), 175 Ill. 89 : "The law is, however, that an insolvent corporation can not prefer a creditor who at the time is a director therein." *Rokker* v. *J. W. Butler Paper Co.* (1900), 88 Ill. App. 278 : "The purpose and spirit of the rule is to prevent officers who are creditors of an insolvent corporation from taking advantage of their position as such officers, to secure a preference over other creditors." *Hays* v. *Citizens Bank* (1893), 51 Kan. 535 : "The directors of a corporation occupy a fiduciary character toward the stockholders and creditors. * * * The decisions are well-nigh unanimous that the directors of such a corporation can not, while they continue in the control of the remaining assets of the corporation, take any advantage of their position to secure preference or advantage for themselves over other creditors." *Cahill* v. *People's Slaughter-House, etc., Co.* (1895), 47 La. Ann. 1483 : "The director who is the trustee of the creditor, who has it in his power to stop expenses and prevent losses to the creditors, is not a third person who can acquire rights superior to him." *James Clark Co.* v. *Colton* (1900), 91 Md. 195 (from syllabus) : "Officers of a corporation, who are also its creditors, can not lawfully pay their own claims in preference to other creditors, when the corporation is insolvent." *Taylor* v. *Mitchell* (1900), 80 Minn. 492 : "But, when the corporation is insolvent, its directors who are its creditors can not secure to themselves any advantage or preference over other creditors. They can not thus take advantage of their fiduciary relation, and deal directly with themselves, to the injury of others in equal right. If they do, equity will set aside the transaction at the suit of creditors of the corporation, or their representatives, without reference to the ques-

tion of any actual fraudulent intent on the part of the directors, for the right of the creditors does not depend upon fraud in fact, but upon the violation of the fiduciary relation of the directors." *Love Mfg. Co.* v. *Queen City Mfg. Co.* (1896), 74 Miss. 290: "To permit it [directors to prefer themselves] would be to allow those entrusted with the governing power of a corporation to prefer themselves by their own determination and action—a proposition monstrous in the extreme, shocking to the moral sense, and wholly indefensible. * * * These directors, by their own will and act, preferred themselves, a thing quite natural, but which the law can not sanction. By their act they practically dissolved the corporation and put an end to its going, and appropriated its property to themselves, thereby destroying forever all chance of realization by other creditors from the continued operation of the corporation." *Symonds* v. *Lewis* (1901), 94 Me. 501: "At common law a debtor may prefer a creditor to the exclusion of others—but a different rule prevails when the creditor is a director of an insolvent corporation debtor. The directors in such case are not strictly trustees for the general creditors, though sometimes so called, but they owe them a duty, which is inconsistent with the taking of a security for prior indebtedness to their detriment." *Williams* v. *Turner* (1902), 63 Neb. 575: "The proposition that an insolvent corporation can not prefer a debt on which its officers and directors are bound as sureties is now thoroughly established in this state." *Smith* v. *Putnam* (1882), 61 N. H. 632: "While directors of corporations are not trustees in a technical sense, there is yet no doubt but that they occupy a fiduciary position toward stockholders and creditors of the corporation, and that they come within the designation of persons filling a fiduciary relationship. In fact, they hold a position of the highest trust, and will therefore be required to execute it with the utmost fidelity. This being so, it is plain that the defendants could not use their official position to advance

their individual interests." *Graham* v. *Carr* (1902), 130 N. C. 271: "The law will not allow the stockholders and officers of the corporation to take advantage of their knowledge of the insolvent condition of the concern, and their power to use and control the assets, to pay their own debts, or to relieve them from special liabilities to the injury of other creditors." *Mueller* v. *Monongahela Fire-Clay Co.* (1898), 183 Pa. St. 450: "It is the settled law of this commonwealth that an insolvent debtor, whether corporation or individual, may prefer *bona fide* creditors; but if the creditor benefited be a director or other officer possessed of corporate power and corporate knowledge of the insolvency of his corporation, then he has an advantage over other creditors whose claims may be of equal merit; he has knowledge that his debt is in peril, and has the power to prefer himself. As he is in a sense trustee for all the stockholders and creditors, equity forbids that he should act solely for himself, regardless of the interests of those for whom he is trustee." *Olney* v. *Conanicut Land Co.* (1889), 16 R. I. 597: "It has been generally agreed that directors are trustees for stockholders. This being established, we think it follows naturally that, when the corporation becomes insolvent and the stockholders have no longer a substantial interest in the property of the corporation, directors should be regarded as trustees of the creditors to whom the property of the corporation must go. * * * If, then, the director be a trustee, or one who holds a fiduciary relation to the creditors, in case of insolvency he can not take advantage of his position for his own benefit to their loss. The right of the creditor does not depend upon fraud or no fraud, but upon the fiduciary relation." *Rowe* v. *Leuthold* (1898), 101 Wis. 242: "While it is true that the mere fact of the insolvency of a corporation does not convert its property into a trust fund for the benefit of all its creditors, so as to prevent one of them, without fraud, from obtaining a preference by ordinary adversary proceedings, yet the officers and

584    APPELLATE COURT OF INDIANA,

City Nat. Bank *v.* Goshen Woolen Mills Co.—35 Ind. App. 562.

directors of an insolvent corporation can not lawfully prefer themselves over its general creditors." *Corbett* v. *Woodward* (1879), 5 Saw. 403: "A director of an incorporation is a trustee of its property and assets for its stockholders and creditors, and it is contrary to the first principles of equity that he should deal with such property for his own advantage and to their injury." *Adams* v. *Kehlor Milling Co.* (1888), 35 Fed. 433: "It may be conceded that a corporation, though insolvent, has the power to prefer creditors, but the relation which directors bear to the corporation as trustees of its assets is such that they can not lawfully exercise the power in question for their personal advantage." *Consolidated Tank-Line Co.* v. *Kansas City Varnish Co.* (1891), 45 Fed. 7: "When a corporation, in its business affairs, is thus *in articulo mortis,* whatever may yet be maintained on divided opinions as to its right to dispose of its property so as to give a preference to some general creditor, the law is too well settled, at least in this jurisdiction, to admit of extended discussion that its directors can not make a disposition of the assets so as to secure to themselves, directly or indirectly, a preference over general creditors. * * * It is not too much to say that it is the established doctrine of the federal courts." *Tennant* v. *Appleby* (1898) (N. J. Eq.), 41 Atl. 110: "Independent of any statute relating to preference of creditors by an insolvent corporation, the directors of a corporation upon its insolvency become trustees for its creditors, and can not use their own positions of trust to obtain for their own debts an inordinate share of the assets." See, also, the dissenting opinion and cases cited by Hadley, J., in *Nappanee Canning Co.* v. *Reid, Murdoch & Co.* (1903), 159 Ind. 614, 59 L. R. A. 199.

In support of the doctrine that a corporation in embarrassed or failing circumstances may prefer debts due to the directors, or indirectly as sureties, the following cases are cited: *Reichwald* v. *Commercial Hotel Co.* (1883), 106 Ill.

439; *Central R., etc., Co.* v. *Claghorn* (1844), 1 Speer Eq. (S. C.) 545; *Sanford, etc., Tool Co.* v. *Howe, Brown & Co.* (1895), 157 U. S. 312, 39 L. Ed. 713, 15 Sup. Ct. 621; *Farmers, etc., Bank* v. *Wasson* (1878), 48 Iowa 336, 30 Am. Rep. 398; *Garrett* v. *Burlington Plow Co.* (1886), 70 Iowa 697, 29 N. W. 395, 59 Am. Rep. 461; *Warfield, Howell & Co.* v. *Marshall, etc., Co.* (1887), 72 Iowa 666, 34 N. W. 467, 2 Am. St. 263; *Sargeant* v. *Webster* (1847), 13 Metc. 497, 46 Am. Dec. 743; *Butler* v. *Harrison Land, etc., Co.* (1897), 139 Mo. 467, 41 S. W. 234, 61 Am. St. 464; *Bank of Montreal* v. *Potts, etc., Lumber Co.* (1892), 90 Mich. 345, 51 N. W. 512; *Peters* v. *Bain* (1890), 133 U. S. 670, 10 Sup. Ct. 354, 33 L. Ed. 696; *Planters Bank* v. *Whittle* (1884), 78 Va. 737; *Worthen* v. *Griffith* (1894), 59 Ark. 562, 28 S. W. 286, 43 Am. St. 50; *Catlin* v. *Eagle Bank* (1826), 6 Conn. 233.

In *Reichwald* v. *Commercial Hotel Co.* (1883), 106 Ill. 439, it is held that the fact that a creditor is a stockholder does not debar him from obtaining security for debts due to himself to the exclusion of other creditors. But in the same state, in *Beach* v. *Miller* (1889), 130 Ill. 162, 22 N. E. 464, 17 Am. St. 291, it is held that if directors are creditors they can not secure any advantage or preference in the payment of their claims at the expense of other creditors; and in *Rockford, etc., Grocery Co.* v. *Standard Grocery, etc., Co.* (1898), 175 Ill. 89, 51 N. E. 642, 67 Am. St. 205, the court said: "The law is, however, that an insolvent corporation can not prefer a creditor who at the time is a director therein."

In *Central R., etc., Co.* v. *Claghorn* (1844), 1 Speer Eq. (S. C.) 545, the court did not find that the corporation was insolvent when the mortgages were given, but states in the opinion that it can not be said that the company was actually insolvent when the mortgages were given or that they were given as a means of winding up. The case depended mainly on a statute of that state.

In *Sanford, etc., Tool Co.* v. *Howe, Brown & Co.* (1895), 157 U. S. 312, the court rests its ruling upon the facts that when the mortgage was executed the corporation was not insolvent; that it was believed by all the parties at the time to be solvent, and was in fact solvent, if the assets were worth as much as they cost; that it was a going concern, and intended to continue in business and did in fact continue for some months in the ordinary way, and paid $30,000 indebtedness, other than that secured, in the usual course of business. The court expressly holds that the rule that directors may not take advantage of their position and power to secure personal advantage to themselves has no application to the facts of that case. It is true that the case was reversed upon appeal from the circuit court (*Howe, Brown & Co.* v. *Sanford, etc., Tool Co.* [1890], 44 Fed. 231), the circuit court having found that the corporation was "deeply insolvent," its debts far in excess of its assets. In *Sutton Mfg. Co.* v. *Hutchinson* (1894), 63 Fed. 496, 11 C. C. A. 320, in answer to the contention that in the absence of statute an insolvent corporation, though not intending to continue its business, might make preferences among its creditors, whoever they may be or whatever their relation to the corporation, Harlan, circuit justice, said: "If this be a sound rule, it would follow that directors, being also creditors, of an insolvent corporation, which has abandoned the objects of its creation and ceased an active existence, may distribute among themselves its entire assets, if the reasonable value thereof does not exceed their aggregate demands. We can not accept this view."

In *Richardson* v. *Green* (1890), 133 U. S. 30, 10 Sup. Ct. 280, 33 L. Ed. 516, it is said in the syllabus: "While the relations of a party towards a corporation, as a director and officer, or as its principal stockholder, do not preclude him from entering into contracts with it, from making loans to it, and from taking its bonds as collateral security, a court of equity will refuse to lend its aid to their enforcement

unless satisfied that the transaction was entered into in good faith, with a view to the benefit of the company as well as of its creditors, and not solely with a view to his own benefit." See, also, United States Supreme Court cases cited above.

*Farmers, etc., Bank* v. *Wasson* (1878), 48 Iowa 336, *Garrett* v. *Burlington Plow Co.* (1886), 70 Iowa 697, and *Warfield, Howell & Co.* v. *Marshall, etc., Co.* (1887), 72 Iowa 666, follow the case of *Buell* v. *Buckingham & Co.* (1864), 16 Iowa 284, which holds that a director creditor may be preferred, although Judge Cole states there was no evidence that the company was insolvent; but the correctness of the rule seems to be doubted in *In re Woolen Mills* v. *Allender* (1897), 101 Iowa 181, 70 N. W. 115. See, also, *Singer Piano Co.* v. *Walker* (1900), 113 Iowa 664, 83 N. W. 725, 13 Am. and Eng. Corp. Cas. (N. S.) 269.

In *Sargent* v. *Webster* (1847), 13 Metc. 497, it is held that a corporation may prefer creditors, but in that case Sargent was not an officer or director, but simply a stockholder. Massachusetts now has a statute restricting the right of insolvents to prefer themselves.

In *Butler* v. *Harrison Land, etc., Co.* (1897), 139 Mo. 467, it was held that the three directors of an insolvent corporation, who were the sole stockholders, might prefer themselves to the exclusion of all other creditors. In a later case (*State, ex rel.,* v. *Manhattan, etc., Mfg. Co.* [1899], 149 Mo. 181, 209, 50 S. W. 321), the court, speaking of the Butler case, and other cases, said: "But in these and in all other cases that have come before this court bringing into question the powers and duties of directors they have been treated as trustees of whom the utmost good faith was demanded, and nothing has been said in any of its decisions that would justify a director in preferring himself to the detriment of the best interest of the corporation or its stockholders." That court formerly held that directors could not prefer themselves. *Roan* v. *Winn* (1887), 93 Mo. 503, 4 S. W. 736; *LaGrange Butter Tub Co.* v. *National Bank*

(1894), 122 Mo. 154, 26 S. W. 710, 43 Am. St. 558; *Suddath* v. *Gallagher* (1895), 126 Mo. 393, 28 S. W. 880. And the court of appeals of that state follows the trust-fund theory, and denies the right to make such preferences. *Williams* v. *Jackson County, etc.* (1886), 23 Mo. App. 132; *Kankakee Woolen Mill Co.* v. *Kampe* (1889), 38 Mo. App. 229; *State, ex rel.,* v. *Brockman* (1890), 39 Mo. App. 131.

In *Peters* v. *Bain* (1890), 133 U. S. 670, 33 L. Ed. 696, the court accepted the construction given a state statute against fraudulent conveyances by the supreme court of appeals of Virginia as controlling. The right of a corporate officer to prefer himself, to the exclusion of other creditors, was not presented.

*Worthen* v. *Griffith* (1894), 59 Ark. 562, follows the Iowa cases, but Arkansas now, by statute, forbids preferences by insolvent corporations.

*Catlin* v. *Eagle Bank* (1826), 6 Conn. 233, simply decides that preferences may be made. No question was made as to the right of directors to prefer themselves.

If the sole managing agents of a corporation may, even after they know it is approaching insolvency, invite public confidence by continuing the business as a going concern, determine for themselves how long they shall continue the losing business, determine how far the assets shall be depleted before they declare the corporation insolvent, these same managing agents, having reached the point where insolvency must be declared, still acting for the corporation, should not be permitted to appropriate the remnant of the assets to the payment of their individual unsecured claims to the exclusion of all other creditors. If the right to collect a debt is "a race of diligence," open alike to all creditors—and this is admitted in some of the above cases, *Buell* v. *Buckingham* (1864), 16 Iowa 284, among others—it is difficult to find any sufficient reasoning that will support the conclusion that the outside creditor has an equal opportunity with the director creditor. It is not enough simply

to say "that he has an advantage, it is true, but it is one which results from his position, and which is known to every person who deals with and extends credit to the corporation." The common, unofficial creditor does not know, when he extends credit to the corporation, that its officers, with their superior advantages, may, upon insolvency, appropriate all its remaining property in payment of their own claims unless a court has previously so declared. What greater advantage could the director creditor ask than to control the corporate affairs, determine when the corporation is insolvent, keep the public and all creditors in ignorance of this fact, and then be permitted, with this exclusive information, to declare himself successful in a contest with another party who did not even know that a contest was to take place? In two or three of the cases it is said that the act of director creditors preferring themselves may constitute a good legislative reason for giving priority to outside creditors, but the legislature must furnish the remedy. But in such a case it would seem that a court of equity should not wait for the legislature to declare the proper rule of action.

8. As we are not able to agree with the conclusion that director creditors of an insolvent corporation may prefer themselves, and believing that the ruling in the case of *Nappanee Canning Co.* v. *Reid, Murdoch & Co.* (1903), 159 Ind. 614, 59 L. R. A. 199, is erroneous, this case is transferred to the Supreme Court under the provisions of §1337j Burns 1901, Acts 1901, p. 565, §10.

Black, J., concurs.

Henley, C. J., dissents.