## ASCERTAINMENT OF THE AMOUNT DUE FROM THE SURETY UNDER A BOND FOR VILLAGE DEPOSITS.

Common Pleas Court of Hamilton County.

THE VILLAGE OF WYOMING V. CITIZENS TRUST & GUARANTY COMPANY OF WEST VIRGINIA.

Decided, January Term, 1917.

*Sureties—Bonds Covering Deposits of a City or Village—Provide Security Only to an Amount Within Ten Per Cent. of the Face of the Bond—Notwithstanding the Deposits Greatly Exceeded That Sum.*

1. A bond securing deposits made by a city or village in a designated depositary, under the provisions of Section 4295, G. C., is a statutory bond into which the provisions of the statute must be read, and the surety must be held to have contracted with a view to the statutory provisions.

2. A bond in the sum of $10,000 secures deposits to the amount of $9,091 only, and where deposits are made in excess of that sum, and the bond is not increased correspondingly, and the depositary becomes insolvent, the amount recoverable under the bond is ascertained by deducting from $9,091 all dividends received and assessing against the surety what remains unpaid of that sum with interest.

*S. C. Roettinger,* Solicitor of the village of Wyoming, and *James E. Robinson,* for plaintiff.

*Pogue, Hoffheimer & Pogue,* contra.

NIPPERT, J.

The defendant in this case is a corporation under the laws of the state of West Virginia, authorized to do business in the state of Ohio, and was at the time this cause of action arose engaged in the general surety business. On or about the 6th day of July, 1909, the defendant, the Citizens Trust & Guaranty Company, entered into a contract with the Metropolitan Bank & Trust Company of Cincinnati, Ohio, as principal, to be held

bound in the sum of $10,000 to the village of Wyoming, upon a certain bond and obligation.

The Metropolitan Bank & Trust Company was designated the depositary for the funds of the village of Wyoming by a resolution adopted by the unanimous vote of all members of council and which reads as follows:

"*Be It Resolved*, by the Council of the Village of Wyoming, Ohio, that bids for the Village funds of the Village of Wyoming, Ohio, having been received by the Finance Committee of the Council of the Village of Wyoming, Ohio, and it appearing to said Finance Committee and to the Council of said Village, that the bid of the Metropolitan Bank of Cincinnati, Ohio, is the highest and best bid, that the said Metropolitan Bank of Cincinnati be designated as the depositary of the Village Funds of the Village of Wyoming, Ohio, and the Treasurer of said Village be and he hereby is authorized and instructed to deposit the funds of the Village of Wyoming, Ohio, in the said Metropolitan Bank of Cincinnati, Ohio, in the manner provided by law and in accordance with the terms of said bid.

"Done at the Council Chamber in Wyoming, Ohio, on the 21st day of June, 1909.

"W. A. CLARK, *Clerk.*        JOSIAH KIRBY, *Mayor.*"

The terms of the bond of the defendant, which the Metropolitan Bank & Trust Company offered as security to the village of Wyoming for its deposit, provided that if during the period beginning on the date of the bond, to-wit, July 7, 1910, and fully to be completed on the 6th day of July, 1910,

"the said Metropolitan Bank & Trust Company shall receive, safely keep, and pay over, all moneys which may come under its custody under and by virtue of the laws of the state of Ohio, relating to such depositaries, and under and by virtue of the said bank's contract with the said incorporated village of Wyoming, and shall properly account for and pay over, as required, the interest on such deposits at the rate agreed upon, and shall faithfully perform all the duties imposed by the laws of the state of Ohio upon it as a depositary of the moneys of said incorporated village of Wyoming, then this obligation shall be null and void; otherwise to remain in full force and virtue.

"Provided, however, that this obligation is entered into by the surety upon the following express conditions:

"1. That in the event of a default on the part of the principal, the surety herein shall only be liable for such proportion of the total loss thereby sustained by the incorporated village of Wyoming as the penalty of this bond shall bear to the total amount of the security held by the said incorporated village of Wyoming, to cover said deposits (if the said village holds, or should hold, any security other than this bond), and in no case shall the surety herein be liable for an amount in excess of ten thousand dollars ($10,000). * * *

"This bond to take effect on the 7th day of July, 1909, and expire at the close of banking hours on the 6th day of July, 1910, but may thereafter be renewed for a further period by the written consent of the principal and surety. * * *

"THE METROPOLITAN BANK & TRUST COMPANY,
                    VIRGINIA,

                              By T. F. McCLURE,
                                            *President.*
"CITIZENS TRUST & GUARANTY COMPANY OF WEST
                              By W. G. PETERKIN,
                                            *President.*
              "Approved, S. C. ROETTINGER,
                                            *"Solicitor."*

By mutual consent the terms and conditions of this bond were extended to the close of banking hours on July 6. 1912.

On September 19, 1911, the incorporated village of Wyoming, through its mayor, notified the Citizens Trust & Guaranty Company that on Monday, the 18th of September, 1911, the Metropolitan Bank & Trust Company was closed by order of the State Bank Examiner.

At the time of the notice it was impossible to tell just what per cent. the assets of this bank would pay. It has since developed, however, and the figures are undisputed, that at the time of the suspension of payment, that is, September 18, 1911, the village of Wyoming had on deposit $19,306.19, a sum far in excess of the face of the bond, and that since the suspension the bank has paid through its receiver dividends in the amount of fifty-five per cent. to the depositors upon the amount of their

respective deposits, being $10,618.40 in this case, and leaving a net balance of $8,687.79 due the said village of Wyoming on its deposits with the Metropolitan Bank & Trust Company.

The Citizens Trust & Guaranty Company, the defendant in this case, on the 22d day of April, 1913, paid to the village of Wyoming the sum of $4,756.50, to apply on the liability of said bond ($4,500 on account of the bond and $256.50 for interest), the said surety company claiming that this is the full amount of its liability under said bond due to said village of Wyoming, while the said village of Wyoming claims that the said surety company is liable for a further amount of $4,187.79 in addition to the above payment, together with interest from the 22d day of April, 1913, for the reason that the amount due under said bond to said village should cover all loss to said village up to a sum not in excess of $10,000, irrespective of any dividends that may have been declared.

It is this point which remains to be decided in the case at bar since the parties to this suit can not agree upon the question of their respective legal liabilities.

It is not denied by the village that its treasurer deposited a greater sum of money in the Metropolitan Bank than was provided for by the terms of the bond, and that this was done without the consent or knowledge of the surety.

The resolution of council under which the money was deposited recites the following:

"And the treasurer of said village be and he hereby is authorized and instructed to deposit the funds of the village of Wyoming, Ohio, in the said Metropolitan Bank of Cincinnati, Ohio, in the manner provided by law and in accordance with the terms of said bid."

At the time when the surety company in this case originally executed the bond in question, that is, July 7, 1909, the act relating to depositaries was in effect. See Ohio Laws, Volume 97, page 270, passed April 20, 1904.

This bond, however, was renewed from time to time, during which period the Legislature amended the act of April, 1904,

by passing Section 4295 of the General Code (Vol. 102 Ohio Laws, page 122), and it was this section of the statute which was in force at the time of the default of the principal and therefore must be considered and read into the bond to determine the rights of the creditor and the liability of the surety.

The provisions of this section as amended, in so far as they pertain to this case, are as follows:

"The council may provide by ordinance for deposit of all public moneys coming into the hands of the treasurer, in such bank or banks, situated within the county, as offer at competitive bidding, the highest rate of interest and give a good and sufficient *bond*   \*   \*   \*   said security to be subject to the approval of the proper municipal officers, *in a sum not less than ten per cent. in excess of the maximum amount at any time to be deposited.*"

Among the important provisions of the bond in question are the following:

"Now, therefore, if, during the period beginning on the date of this bond, the said the Metropolitan Bank & Trust Company, shall receive, safely keep and pay over, all moneys which may come under its custody under and by virtue of the laws of the state of Ohio, relating to such depositaries, and under and by virtue of the said bank's contract with the said incorporated village of Wyoming, and shall properly account for and pay over, as required, the interest on such deposits at the rate agreed upon, and shall faithfully perform all the duties imposed by the laws of the state of Ohio upon it as a depositary of the moneys of said incorporated village of Wyoming, then this obligation shall be null and void;   \*   \*   \*

"Provided, however, that this obligation is entered into by the surety upon the following express conditions:

"1. That in the event of default on the part of the principal, the surety herein shall only be liable for such proportion of the total loss thereby sustained by the incorporated village of Wyoming, as the penalty of this bond shall bear to the total amount of security held by the said incorporated village of Wyoming to cover said deposits (if the said village holds, or should hold, any security other than this bond), and in no case shall the surety herein be liable for an amount in excess of ten thousand dollars ($10,000)."

The surety company's liability depended upon the terms of the bond. The bond in this case is a statutory bond and the statutes pertaining to its subject-matter must be read into the bond itself as one or more of its terms and the obligor must be held to contract with a view to the provisions of the statute. Thus the provisions of Section 4295 become part of the contract of surety and equally binding on all the parties.

The court, in the case of *State, ex rel,* v. *Rubber Mfg. Co.,* 149 Mo., 189, at 212, says:

"As a general rule neither principal nor surety is obligated beyond what is nominated in the bond. But that is not always so either as to the one or the other. And it is not so in this case. When the parties execute a statutory bond, they are chargeable with notice of all provisions of the statute relating to their obligation, and those provisions are to be read into the bond as its terms and conditions."

See also, *Banks* v. *DeWitt,* 42 Ohio St., 263, reading page 274; *Helt* v. *Whittier,* 31 Ohio St., 476.

Since the village of Wyoming at no time had a bond of more than $10,000 to secure its deposits with the Metropolitan Bank & Trust Company, said amount being a sum not less than ten per cent. in excess of the maximum amount at any time to be deposited, the village was not permitted to have more than $9,-091 at any one time on deposit with said bank, its legal deposits being thus limited by the provisions of Section 4295. As the village increased its deposits it should have, in compliance with the law, also required the bank to furnish additional security. This the village of Wyoming failed to do and the village becomes liable by its neglect to comply with the terms of the statute intended to protect the tax-payers in like or similar cases.

So that, where a surety has agreed to pay for any loss accruing to its principal under the terms of a certain contract setting forth its obligations and liabilities, the bondsman can not be held for the loss sustained by the village under an entirely different condition of things than were in existence either at the time of making the contract or in contemplation at that time by either

party, and last, but not least, under conditions *not* approved by the statute of our state.

Should the loss occasioned by the failure to comply with this law fall upon those whom the law designates as the persons chargeable with the duty of its performance, or upon a party who has complied with the terms and obligations as set out and strictly defined by a contract, which presupposes the compliance with the law on part of the village or its treasurer?

It does not appear equitable that the surety company in the case at bar, having complied with the terms and conditions of its obligation, should now be made to suffer by reason of the non-observance of the law in respect thereto by the plaintiff. All inconvenience or loss which the plaintiff has suffered would have been avoided if plaintiff had complied with the terms of the statute. If, upon increasing its deposits with the Metropolitan Bank, the village of Wyoming had also insisted upon the bank furnishing additional security, as provided by Section 4295, General Code, no loss would have been suffered by the village of Wyoming. But, instead of increasing the security, the village council disregarded the provisions of the statute and upon the suspension of payment on part of the bank, the village was confronted with a serious loss, unless it could apply all of the dividends to the payment of its claim and in addition receive from the surety company, the defendant herein, the full amount of the bond, to-wit, $10,000.

The surety company, however, contends that since the law permitted the village to deposit no more than $9,091 with the Metropolitan Bank as long as the surety to secure said deposit remained at $10,000, that the loss sustained by the village, under the provisions of this bond, should be paid, as far as possible, out of the assets of the bank, and if they are not sufficient to pay the loss that then the surety company is to contribute so much under the bond as together with the dividends declared will total the sum of $9,091.

As a matter of fact, fifty-five per cent. of $10,000 has been paid on account of the claim of the village of Wyoming against

the bank, and the surety company has paid the balance of forty-five per cent. to the village, or $4,756.50, claiming that this is in full of its obligation under the terms of the bond and the provisions of the statute.

Under the circumstances of this case, the village ought not be permitted to apply all of the dividends so received from the bank to the unsecured portion of its deposits, or to those deposits made in violation of Section 4295, General Code, and which do not come within the terms and meaning of the bond. The sole authority for the designation of a public depositary where all the public funds of any municipal corporation may be deposited is derived from statutory provisions. The state Legislature has authorized such a deposit because a higher rate of interest could be received in such a case, which would thus beneficially inure to the good of the public, and the law specifically provided against the bank's failure and for the adequate protection of the public funds by requiring a good and sufficient bond. The failure to comply with the statute has led directly to the loss of the public funds in the hands of the bank at the time of the receivership, for, as stated above, if sufficient security had been taken from the bank to cover deposits as larger deposits were being made by the village from time to time, the village would have had ample protection and security. But the village sustained the loss, (1) by reason of failing to demand additional security; (2) because the village council, in its quarterly accounting with the treasurer, as required by law, failed to discover and never questioned the large balance standing to the credit of the village in the hands of this bank without security.

We are of the opinion that the village is estopped in this proceeding to deny the negligence of its council, its treasurer or any other officer, as such negligence is chargeable directly to the corporation, which can only act through its officers.

In conclusion, it appears that the surety heretofore paid to the village its admitted share of the loss on a basis of $10,000, that is to say, forty-five per cent. of $10,000, together with some

interest, but it appears that this payment was made under a mistake of fact and the surety company in its cross-petition herein asks for equitable relief to the extent of the excess payment made to the village.

As the village had no right under the law to deposit more than $9,091, we think that the application of the surety is well taken and the prayer of the cross-petition will be granted.

A decree may be submitted finding the equities of the case to rest with the defendant and that the surety company under its bond is obligated to contribute a sum not exceeding forty-five per cent. of $9,091, together with such adjustment in interest as the facts of the case justify.